The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| NANCY GILL, | ) | |
| | ) | Case No. 2:19-cv-00860-MJP |
| Plaintiff, | ) | |
| | ) | AMENDED COMPLAINT FOR DAMAGES |
| vs. | ) | |
| | ) | |
| MICHAEL MAGAN, MICHAEL GONZALEZ, | ) | (Jury Trial Demanded) |
| TIMOTHY RENIHAN, CITY OF SEATTLE, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**INTRODUCTION**

1.      This is an action for damages against City of Seattle and three of its agents,

Michael Magan, Michael Gonzalez, and Timothy Renihan.

**JURISDICTION**

2.      The jurisdiction of this Court over this Amended Complaint is invoked pursuant

to the provisions of 28 U.S.C. §§ 1331and 1343(a)(1), (2), (3), and (4) for plaintiff's federal

constitutional claims, which derive from the provisions of 42 U.S.C §§ 1983 and 1988 and the

Constitution of the United States, specifically the Fourth and Fourteenth Amendments thereto.

**Civil Rights Justice Center, PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

3.      This Court has supplemental jurisdiction over the State claims pursuant to 28 U.S.C. § 1367 by virtue of the fact that they arise out of the same transactions or series of transactions as do the claims alleged herein under federal and constitutional law.

**VENUE**

4.      The actions which form the basis of this complaint took place in the city of Lake Stevens, thus venue is proper in the Western District of Washington Courthouse in Seattle.

**PARTIES**

5.      Plaintiff Nancy Gill is over the age of 18 and resides in Snohomish County, Washington.

6.      Defendant Michael Magan is now, and at all times relevant to this complaint, was a detective and police officer in the Seattle Police Department Robbery Unit and in doing the things herein alleged, was acting under color of law and within the course and scope of his employment by defendant City of Seattle.

7.      Defendant Michael Gonzalez is now, and at all times relevant to this complaint, was an officer of the Seattle Police Department Anti-Crime Team and in doing the things herein alleged, was acting under color of law and within the course and scope of his employment by defendant City of Seattle.

8.      Defendant Timothy Renihan is now, and at all times relevant to this complaint, was a detective at the Seattle Police Department in doing the things herein alleged, was acting under color of law and within the course and scope of his employment by defendant City of Seattle.

AMENDED COMPLAINT FOR DAMAGES - 2
CASE NO. 2:19-CV-00860-MJP

**Civil Rights Justice Center, PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

9.      Defendant City of Seattle, Washington is now, and at all time mentioned herein

was, a governmental entity and a political subdivision of the State of Washington, duly organized

and existing under the State of Washington.

10.      Each defendant is, and at all times herein was, an agent of the other and acting

within the course and scope of that agency in causing the harm as herein alleged.

## ADMINISTRATIVE PROCEEDINGS

11.      Within the statutory time period, specifically on February 1, 2019, plaintiff filed

claims, arising out of the events alleged herein, against the City of Seattle and Snohomish

County. More than 60 days have passed and neither the City of Seattle nor Snohomish County

has responded.  The torts claims were rejected as a matter of law.

## FACTUAL BACKGROUND

12.      At some point Steven Fisher owned a house located at 3 119th Dr. SE Ave in Lake

Stevens, Washington.

13.      On January 25, 2017, the Red Sea Financial Center located at 2301 S. Jackson

Street was robbed by a white male who posed as an FBI agent and who had a fake search

warrant. Initially the Seattle Police had no suspects.

14.      It was sold and the new owner, Evolve 119th LLC, flipped the house. The newly

renovated house was and still is advertised on many housing sites, including Zillow. Plaintiff

Nancy Gill purchased the newly renovated house on May 18, 2017.

15.      On July 19, 2017, two months after purchasing the home, Gill's daughter Bridget

mentioned that she noticed someone watching the house from a silver car.

16.      On Wednesday, July 26, 2017 another establishment was approached

telephonically by a man pretending to be an FBI agent and asking to remove all of the cash from

Civil Rights Justice Center, PLLC
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

the business because the business was about to be robbed.  The operator of the business

immediately calls 911 and reports the incident.

17.     On August 19, 2017, Mr. Fisher was arrested for allegedly posing as an FBI

agent. Mr. Fisher was thought to have previously impersonated FBI agents in order to rob banks

and various businesses. He was brought into King County Jail that day.

18.     On August 21, 2017 at 11:00 defendants Magan and Reniham met to discuss the

robbery at the Red Sea Financial Center that occurred on January 25, 2017 and the suspicion that

Steven Fisher was the man who committed the robbery.

19.     On August 21, 2017 at 11:30 Steven Fisher is brought from the jail and brought

down to the Intake and Release desk. He is met there by Defendant Magan who walks him to the

robbery interview room.  According to a report filed by Magan, Mr. Fisher told him that he grew

up in Kirkland and he is currently staying with his mother at a new address in Lake Stevens

Washington and Fisher said his license on his driver's license was current.

20.     Also, at 11:30, defendant Renihan claims he conducted Law Enforcement records

checks of S/Fisher. using DAPS, LINX, Accurint and SFD and DAPS showed an update on his

vehicle 2-22-17 for the address 3-119 Dr. SE Lake Stevens, WA; Linx showed a 2006 Sno

Country driving incident and Accurint showed an address of 3-119 Dr SE, Lake Stevens from

2003 to 2017.  3 119th Dr. Se Lake Stevens, clearly was an old address and was not the new

address of his mother's home referred to earlier.

21.     On August 21, 2017 at approximately 12:10, Detectives Magan and Cobane

interviewed Steven Fisher at the Seattle Police Station.  During the interview, Mr. Fisher said he

did not work and that he had been living with his folks for the past few months.  He was never

asked what that address was. Neither detective asked Mr. Fisher what his parents' names were or

**Civil Rights Justice Center, PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

where they lived and Steven.  It was obvious to both detectives that Mr. Fisher was lying

throughout the interview as was deflecting his own blameful conduct to others.

22.     On August 21, 2017 at 1:09 p.m., after the interview with Fisher ended, defendant

Renihan asked that Steven Fisher's phone calls be restricted so that he does not destroy evidence

while the search warrant is pending.  Outgoing calls by Fisher were then monitored and listened

to by Renihan.

23.     On August 21, 2017 at approximately 3:00 p.m. defendant Renihan began

listening to calls made from jail by Fisher. At 6:00 p.m. Renihan listened to calls from Fisher's

mother to him.

24.     On August 21, 2017, at approximately 8:38 p.m., defendant Michael Magan

applied via email for a search warrant to be signed by Judge Dean Lum of the King County

Superior Court. The warrant authorized the officers to search of 3 119th Dr. SE for counterfeit

law enforcement documents, any badges, logos or police equipment that could help someone

impersonate an officer or agent. The warrant specifically mentioned the search of Fisher's car

and residence.  The affidavit for the warrant contained the following false information: "During a

brief interview with Fisher, he admitted he lives with his mother at 3 119th Avenue Drive SE in

Lake Stevens Washington.  This is the same address on his driver's license and the same address

he provided to King County Jail at booking."  The warrant also omitted the fact that Fisher told

detectives Cobane and Magan that he was staying with his folks at a new address.  It omitted

Magan's belief that Fisher was being deceptive during the interview or that detective Renihan

had listened to Fisher's mother's call to Steven Fisher.  The affidavit omitted the fact that

Snohomish County property records showed that the 3 119th Drive SE was sold to plaintiff

AMENDED COMPLAINT FOR DAMAGES - 5
CASE NO. 2:19-CV-00860-MJP

**Civil Rights Justice Center, PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

1  Nancy Gill in May of 2017.  The application also failed to mention that Steven Fisher and Nancy

2  Gill were only 9 years apart in age and Gill could not possibly be his mother.

3        25.     The affidavit lacked any probable cause to believe that any evidence of the crime

4  that occurred in January of 2017 of criminal impersonation would be found at the above

5  referenced address in August of 2017.

6        26.     Judge Lum reviewed the application and swore defendant Magan in and approved

7  the search warrant via email at 8:55 p.m.

8        27.     On August 21, 2017 at approximately between 9:15 and 9:45 p.m., Mr. Fisher's

9  briefcase and car were searched and photographed by the Seattle Police Department.

10        28.     On August 22, 2017 at 10:25 a.m. Renihan removed a house key from a key ring

11  he found on the windshield of the Mini cooper automobile they had searched around 11:00 p.m.

12  on August 21, 2017.

13        29.     On August 22, 2017 at 10:40 a.m. Timothy Renihan received an email from U.S.

14  Postal Inspector Jeremy Leder that said the post office confirmed Steven Fischer gets mail at

15  some address in Lake Stevens, but it does not identify the address.  They have the last name

16  Fischer on the carrier's case for that address. There are no other names for that address.

17        30.     On August 22, 2017 at 11:23 a.m., Renihan talked to the Manager at the Public

18  Storage in Everett who stated that at 10:00 a.m. that morning, Margaret Zemak, mother of Steven

19  Fisher was at the office stating that she wanted to get something out of Fisher's unit and then

20  clear it out.  The Manager said she had no authority to let Zemak in. It is unknown what Renihan

21  did with this information. This information was either never revealed to Magan or it was ignored

22  by him.

23

AMENDED COMPLAINT FOR DAMAGES - 6
CASE NO. 2:19-CV-00860-MJP

**Civil Rights Justice Center, PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

31.     On August 22, 2017 at 12:00 p.m., the Seattle Robbery Unit Tactical team met detectives of the Robbery Unit to plan the method of entry and the type of search to be conducted of 3 119th Dr. SE Lake Stevens WA 98258

32.     On August 22, 2017 at 1:00 p.m., the Seattle Police Department Robbery Unit, the Snohomish County Sheriff and the FBI met at a predetermined location before caravanning to Gill's home. Gill's red Lexus was parked in the driveway of the house. Defendants Magan and Renihan were both present for this briefing.

33.     The officers banged on the front door, unsuccessfully attempted to use Fisher's key and then used a battering ram to break the door down. Other officers went to the side of the house and used bolt cutters to break the padlock on the gate to the backyard before breaking through the glass sliding door in Gill's backyard. The officer's entry to the front and back of Gill's home occurred at the same time.

34.     Gill was in the bathroom when the officers entered her house. Thinking she was being robbed, she immediately texted her daughter Bridget and her friend Deborah Oswald, to call 911. Bridget was without service and could not make a phone call. She texted her close friend, Mackenzie Hunnycut, to call 911. The 911 dispatch operator told Ms. Hunnycut that the police were already at Gill's house. Deborah Oswald called 911 as well.

35.     The officers immediately went to the attic to begin their search, despite not having cleared the house. The officers were wearing bullet proof vests and their guns were drawn.

36.     Defendant Michael Magan and/or Michael Gonzalez opened the door to the bathroom where Gill was hiding for safety. She immediately said, "I own this house" and told him the officer he was in the wrong house. Magan told Gill she was under arrest and would be taken in for questioning. He handcuffed her, sat her down in a chair, and immediately began

AMENDED COMPLAINT FOR DAMAGES - 7
CASE NO. 2:19-CV-00860-MJP

**Civil Rights Justice Center, PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

questioning her in the bedroom. No other officers where present in the room. Magan never asked for her identification.

37.     Magan began asking a series of questions about the house. He never asked her if she owned the house or if she knew Mr. Fisher. The moment Gill realized that the search was connected to the bank robber who previously lived in her house, she told Magan that she was close friends with Eric Barden, the Police Commander of the Seattle Police Department Robbery Unit. He had sent her a text just that morning telling her he was going out of town and was unaware that the search was connected to Gill.

38.     Magan and the rest of the officers got on the phone with Mr. Barden. After their conversation, the officers removed Gill's handcuffs, vacuumed the house and left. Nearly an hour had passed since the officers first entered Gill's home. Gill noticed that the silver car which was previously present near her house was present that day.

39.     Two members from the Lake Stevens Fire Department arrived at Gill's house and nailed her front door shut.  The front door and the rear sliding door suffered extensive damages.

40.     Gill spent over six months repairing her new home, specifically fixing the front door, the rear sliding door, the bedroom closet and damage to the drywall and attic vents.

41.     As a result of this incident and the emotional distress it caused, Gill was unable to work for six months and lost her job.

42.     A few months prior to the incident, she underwent spinal fusion back surgery and was further harmed by being handcuffed behind her back. She now suffers from PTSD, nightmares, and anxiety induced by the trauma of being arrested at gunpoint.

**FIRST CLAIM FOR RELIEF**

**(Unlawful Entry and Search - 42 U.S.C. § 1983 - Violation of Fourth Amendment)**

AMENDED COMPLAINT FOR DAMAGES - 8
CASE NO. 2:19-CV-00860-MJP

**Civil Rights Justice Center, PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

43.     Plaintiff realleges and incorporated by reference herein paragraphs 1 through 42 with the same force and effect as if such paragraphs were separately realleged in this First Claim for Relief.

44.     The actions of defendants Magan, Gonzalez, and Renihan in entering and searching plaintiff's residence without probable cause based on a warrant obtained by fraud and deception committed by Magan and Renihan violated each plaintiff Fourth Amendment rights to be free from such unlawful entries and searches in violation of 42 United States Code §1983.violated plaintiff's Fourth Amendment right to be free from unlawful entries and searches in violation of 42 U.S.C. § 1983.

45.     As a direct and proximate result of defendants' acts, plaintiff had her home invaded by defendant officers and deputies and had her right to privacy disturbed all according to proof at trial.

46.     As a direct and proximate result of defendants' conduct, plaintiff sustained economic and non-economic damages, including, without limitation mental suffering, embarrassment, emotional distress, emotional trauma, and other mental pain and suffering; and other damages, which will be proven at trial. The conduct of defendant officers, and each of them, was done in reckless and conscious disregard of the pain and suffering it was bound to inflict upon plaintiff for which an award of punitive damages is mandated against each individual defendant.

## SECOND CLAIM FOR RELIEF

### (Unlawful Seizure, No Probable Cause

### 42 U.S.C. § 1983: Violation of Fourth Amendment)

**Civil Rights Justice Center, PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

47.     Plaintiff realleges and incorporated by reference herein paragraphs 1 through 46 with the same force and effect as if such paragraphs were separately realleged in this Second Claim for Relief.

48.     Plaintiff was seized without an arrest warrant and without probable cause. Defendants Magan and Gonzalez unlawfully arrested plaintiff and put her in handcuffs.

49.     This unlawful seizure was done with the specific intent to deprive plaintiff of her constitutional rights to be secure in her property under the Fourth Amendment.

50.     By these actions as described herein, defendants, acting under color of statute, ordinance, regulation, custom, or usage, deprived plaintiff of rights, privileges, or immunities secured by the Constitution and laws, namely, plaintiff's liberty interest in freedom from unreasonable seizure.

51.     As a direct and proximate result of the actions and omissions described in this complaint, plaintiff incurred special damages for home repairs and other expenses, other economic damages, physical pain and suffering and emotional distress all to her damage in an amount to be ascertained to proof at trial.  The conduct of defendant officers, and each of them, was done in reckless and conscious disregard of the pain and suffering it was bound to inflict upon plaintiff for which an award of punitive damages is mandated against each individual defendant.

## THIRD CLAIM FOR RELIEF

**(Unlawful Seizure, Failure to Prevent a**

**42 U.S.C. § 1983: Violation of Fourth Amendment)**

**Civil Rights Justice Center, PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

52.     Plaintiff realleges and incorporated by reference herein paragraphs 1 through 51 with the same force and effect as if such paragraphs were separately realleged in this Third Claim for Relief.

53.     Defendant Renihan and Magan were aware that Fisher did not live at 3 119th Dr. Se in Lake Stevens and they were aware they Nancy Gill,  had purchased the property in May of 2017 prior to serving the search warrant on plaintiff's home.  They were also aware that Nancy Gill was not Steven Fisher's mother and they knew that Fisher's mother had been at a storage unit earlier on the day of the search trying to clear it out.  These two detectives also failed to tell the magistrate that about what they found during the search of Fisher's car the night before which indicated that he kept all of his impersonation items in the car and in a brief case and that he was receiving his mail at a Post Office Box and not at 3 119th Dr. Se but did not share this information with the judge or the members of the entry team.

54.     By these actions as described herein, defendants, acting under color of statute, ordinance, regulation, custom, or usage, deprived plaintiff of rights, privileges, or immunities secured by the Constitution and laws, namely, plaintiff's liberty interest in freedom from unreasonable seizure.

55.     As a direct and proximate result of the actions and omissions described in this complaint, plaintiff incurred special damages for home repairs and other expenses, other economic damages, physical pain and suffering and emotional distress all to her damage in an amount to be ascertained to proof at trial.  The conduct of defendant officers, and each of them, was done in reckless and conscious disregard of the pain and suffering it was bound to inflict upon plaintiff for which an award of punitive damages is mandated against each individual defendant.

AMENDED COMPLAINT FOR DAMAGES - 11
CASE NO. 2:19-CV-00860-MJP

**Civil Rights Justice Center, PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

**FOURTH CLAIM FOR RELIEF**

**(42 U.S.C. § 1983 - Monell Claim – City of Seattle)**

56.     Plaintiff realleges and incorporated by reference herein paragraphs 1 through 55 with the same force and effect as if such paragraphs were separately realleged in this Fourth Claim for Relief.

57.     At all times herein mentioned, the City of Seattle had a mandatory duty of care to properly and adequately hire, train, retain, supervise, and discipline its police officers so as to avoid unreasonable risk of harm to citizens.

58.     With deliberate indifference, the City of Seattle failed to take necessary, proper, or adequate measures in order to prevent the violation of plaintiff's rights. The officers whose conduct is described above do not know what constitutes probable cause to search and arrest a person because of inadequate training or tacit approval of said conduct by the Seattle Police Department and tolerance by the department of Fourth Amendment violations.

59.     The lack of correct discipline and failure to properly train and correct have exposed those who are in compliance with the law to unreasonable searches and arrests.

60.     The need to train officers in the constitutional limitations on the search and seizure of citizens and the amount of force to apply when doing so can be said to be "so obvious" that the failure to do so could properly be characterized as "deliberate indifference" to constitutional rights. The result is the continuous unreasonable and unnecessary deprivation of a citizen's rights. Such conduct on the part of defendant City of Seattle renders it liable for its officers' constitutional violations.

Civil Rights Justice Center, PLLC
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

61.     As a direct and proximate result of the foresaid acts, omissions, policies, customs, and ratification of defendant City of Seattle, the individual defendant officers caused the constitutional violations and damages described above.

## FIFTH CLAIM FOR RELIEF

### (Negligence)

62.     Plaintiff realleges and incorporated by reference herein paragraphs 1 through 61 with the same force and effect as if such paragraphs were separately realleged in this Fifth Claim for Relief.

63.     The acts of defendants as described above constituted negligence in the use and deployment of a search warrant in the circumstances of this case. Defendants were negligent in failing to recognize that neither Mr. Fisher, nor any of his family members lived at plaintiff's address and that plaintiff was not the target or the object of the search warrant.  Defendants directly caused harm to plaintiff by their negligent conduct.

64.     As a direct and proximate result of each defendants' negligent conduct, plaintiff sustained economic and non-economic damages, including, without limitation, mental suffering, embarrassment, emotional distress, emotional trauma, and other mental pain and suffering, and other damages, to be proven at trial.

## SIXTH CLAIM FOR RELIEF

### (False Arrest)

65.     Plaintiff realleges and incorporated by reference herein paragraphs 1 through 64 with the same force and effect as if such paragraphs were separately realleged in this Sixth Claim for Relief.

**Civil Rights Justice Center, PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

66.     The conduct of defendant officers in detaining and arresting plaintiff constitutes false imprisonment of plaintiff.  There was no probable cause for the arrest.

67.     Plaintiff was the second owner of the house after Mr. Fisher. It had been months since Mr. Fisher had lived in the house and he was arrested three days prior to the search and arrest. The warrant used to search plaintiff's home targeted Mr. Fisher, yet the officers did not stop the search when they saw plaintiff was the homeowner.

68.     The actions of defendants in arresting plaintiff without probable cause constitutes false imprisonment.

69.     As a direct and proximate result of defendant officers' intentional conduct, plaintiff sustained economic and non-economic damages, including, without limitation, mental suffering, emotional distress, emotional trauma, physical pain and suffering, and other mental pain and suffering; and other damages, which will be proven at trial.

## SEVENTH CLAIM FOR RELIEF

### (Unlawful Search)

70.     Plaintiff realleges and incorporated by reference herein paragraphs 1 through 69 with the same force and effect as if such paragraphs were separately realleged in this Seventh Claim for Relief.

71.     The actions of all defendant officers in searching plaintiff's home deprived her of her right to be free from unlawful search.

72.     The direct and proximate result of each defendant's acts is that plaintiff suffered economic losses and mental suffering and emotional distress.

## EIGHT CLAIM FOR RELIEF

### (Trespass)

**Civil Rights Justice Center, PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

73.     Plaintiff realleges and incorporated by reference herein paragraphs 1 through 72 with the same force and effect as if such paragraphs were separately realleged in this Eighth Claim for Relief.

74.     The actions of defendants and each of them in entering plaintiff's home without her permission or consent constitute trespassing and a contributing factor to her emotional distress damages.

75.     As a direct and proximate result of defendants' trespass, plaintiff sustained economic and non-economic damages, including, without limitation, mental suffering, emotional distress, emotional trauma, physical pain and suffering, and other mental pain and suffering; and other damages, which will be proven at trial.

## NINTH CLAIM FOR RELIEF

### (Battery)

76.     Plaintiff realleges and incorporated by reference herein paragraphs 1 through 75 with the same force and effect as if such paragraphs were separately realleged in this Ninth Claim for Relief.

77.     Defendants Magan and Gonzalez acted with the intent to cause, and did in fact, cause offensive contact with plaintiff by grabbing plaintiff and handcuffing her behind her back.

78.     All defendants are liable for said conduct under both vicarious liability and on an agency relationship.

79.     At no time did plaintiff consent or acquiesce to any of defendants' acts alleged above.

AMENDED COMPLAINT FOR DAMAGES - 15
CASE NO. 2:19-CV-00860-MJP

**Civil Rights Justice Center, PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

80.     As a direct and proximate result of defendant officers' intentional conduct,

plaintiff sustained economic and non-economic damages, including, without limitation mental

suffering, embarrassment, emotional distress, emotional trauma, and other mental pain and

suffering; and other damages, which will be proven at trial.

### TENTH CLAIM FOR RELIEF

### (Respondeat Superior – City of Seattle)

81.     Plaintiff realleges and incorporated by reference herein paragraphs 1 through 80

with the same force and effect as if such paragraphs were separately realleged in this Tenth

Claim for Relief.

82.     In doing the things herein alleged, defendant officers were acting within the

course and scope of their employment with the City of Seattle. The City of Seattle is therefore

liable for the conduct of the defendant officers.

### PRAYER

WHEREFORE, plaintiff respectfully prays that this Court enter judgment against

defendants, granting plaintiff:

A.      A money judgment against each defendant in an amount which will fully compensate her

     for her economic losses, injuries, other losses, harm and damages sustained in this matter;

B.      That the Court award plaintiff her costs, including reasonable and statutory attorney fees

     incurred in this matter, as provided by law; and

C.      Such further relief as this Court deems appropriate.

Civil Rights Justice Center, PLLC
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

1  DATED this __12th__ day of __March_____, 2020.

2                                              CIVIL RIGHTS JUSTICE CENTER, PLLC

3
                                               /s/ Darryl Parker
4                                              _____
                                               **Darryl Parker**, WSBA #30770
5                                              Attorney for Plaintiff

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

AMENDED COMPLAINT FOR DAMAGES - 17                **Civil Rights Justice Center, PLLC**
CASE NO. 2:19-CV-00860-MJP                        2150 N 107th Street, Suite 520
                                                  Seattle, Washington 98133
                                                  (206) 557-7719 / Fax: (206) 659-0183

**CERTIFICATE OF SERVICE**

I, Jordon Henderson, under penalty of perjury under the laws of the State of

Washington declare as follows:

I am a legal assistant at the Civil Rights Justice Center, PLLC, and am over the age of 18.

On the date and in the manner indicated below, I caused the foregoing AMENDED COMPLAINT

FOR DAMAGES and this CERTIFICATE OF SERVICE to be served on:

Susan Park, WSBA 353857
Ghazal Sharifi, WSBA #47750
Assistant City Attorney
Seattle City Attorney's Office
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8217
Susan.park@seattle.gov
Ghazal.sharifi@seattle.gov

[  ] via legal messenger
[  ] via first class mail
[  ] via facsimile
[x] via email

DATED this __12th__ day of __March_____, 2020 at Seattle, Washington.

/s/ Jordon Henderson
_____
**Jordon Henderson**, Legal Assistant

AMENDED COMPLAINT FOR DAMAGES - 18
CASE NO. 2:19-CV-00860-MJP

**Civil Rights Justice Center, PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183