The Honorable Marsha J. Pechman
Noting Date: January 15, 2021

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| NANCY GILL,<br><br>                              Plaintiff,<br><br>              vs.<br><br>MICHAEL MAGAN, MICHAEL GONZALEZ,<br>TIMOTHY RENIHAN AND THE CITY OF<br>SEATTLE,<br><br>                              Defendants. | No.      2:19-cv-00860-MJP<br><br>DEFENDANTS' MOTION<br>FOR SUMMARY JUDGMENT<br><br>**NOTING DATE: January 15, 2021**<br>**NO ORAL ARGUMENT** |

## I.      RELIEF REQUESTED

Defendants Michael Magan, Michael Gonzalez, Timothy Renihan, and the City of Seattle ("Defendants") respectfully request that the Court enter summary judgment under Fed. R. Civ. P. 56(a) in Defendants' favor on all claims and dismiss Plaintiff's case with prejudice.

## II.      STATEMENT OF MATERIAL FACTS

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 1
2:19-cv-00860-MJP

The above-captioned matter arises out of the Seattle Police Department ("SPD")'s August 22, 2017 execution of a search warrant on Plaintiff Nancy Gill ("Gill")'s residence at 3 119 Dr. SE, Lake Stevens, WA 98258 ("the Lake Stevens address" or "the Lake Stevens residence"), which ultimately turned out to be the prior, not current, residence of the subject of a criminal investigation.

Plaintiff alleges claims of: (1) unlawful entry and search as a violation of the Fourth Amendment; (2) unlawful seizure as a violation of the Fourth Amendment; (3) false arrest; (4) unlawful search; (5) a *Monell* claim; (6) negligence; (7) trespass; (8) battery; and (9) respondeat superior. However, the undisputed facts establish that in line with SPD's policies and practices, the detectives made extensive inquiries to verify the address to be searched and their actions while executing a valid search warrant were consistent with the Fourth Amendment.

## A. SPD's Investigation into Steven Fisher

SPD Detective Michael Magan ("Magan") investigated an armed robbery that occurred on January 25, 2017 at Red Sea Financial Company (an immigrant owned money transferring company) by a suspect posing as an F.B.I. agent. (Magan Dec., ¶2, Exh. A, Magan Affidavit for Search Warrant, SEA000527). On August 21, 2017, Detective Magan learned of two similar robberies (one on July 26, 2017 and another on August 19, 2017) by an individual impersonating an F.B.I. agent at Dahabshil Inc., also an immigrant owned money transferring service. (Park Dec., ¶2, Exh. A, Magan Depo., p. 18:24 – 19:03; Magan Dec., ¶2, Exh. A, Magan Affidavit for Search Warrant, SEA000530). A distinctive hallmark of all three robberies was the suspect's use of the names "Frank Abagnale" (a fictional character who played an F.B.I. agent in the movie "Catch Me If You Can") and "Jack Ryan" (a fictional F.B.I. agent from the Tom Clancy novels). (Magan Dec., ¶2, Exh. A, Magan Affidavit for Search Warrant, SEA000528 – SEA000530).

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 2
2:19-cv-00860-MJP

Steven Fisher ("Fisher"), the F.B.I. impersonator responsible for the three robberies, was arrested on August 19, 2017. (Magan Dec., ¶2, Exh. A, Magan Affidavit for Search Warrant, SEA000531).

**B.  Detective Magan's Application for a Search Warrant to Search Fisher's Residence, Vehicle and Briefcase**

Detective Magan applied for and obtained a search warrant ("the search warrant") signed by Judge Dean Lum of King County Superior Court on August 21, 2017 to search the following: (1) Fisher's residence at 3 119th Dr. SE, Lake Stevens, WA 98258; (2) Fisher's 2005 Mini Cooper stored at the SPD Processing Room; and (3) A brown leather briefcase stored at the SPD Evidence Room. (Magan Dec., ¶2, Exh. A, Magan Affidavit for Search Warrant, SEA000521 – SEA000535).  As to the target address of the search warrant, Detective Magan attested to the following information in his accompanying affidavit: "[H]e [Fisher] admitted he lives with his mother at 3119th Avenue Drive SE in Lake Stevens, Washington. Th[is] is the same address on his driver's license and the same address he provided to the King County Jail at booking." (Magan Dec., ¶2, Exh. A, Magan Affidavit for Search Warrant, SEA000531).

**C.  Detectives Magan and Renihan Rely on Numerous Sources of Information to Verify the Accuracy of the Lake Stevens Address**

Prior to applying for the search warrant, Detectives Magan and Renihan conducted numerous checks to verify the accuracy of the Lake Stevens address. *See* Sections III.B.1, *infra* for a detailed breakdown of the numerous checks that Detectives Magan and Renihan conducted to verify the accuracy of the Lake Stevens address.

**D.  SPD's Execution of the Search Warrant at the Lake Stevens Address**

On August 22, 2017, SPD detectives and officers, accompanied by the Snohomish County Sheriff's Office and the FBI, arrived at the Lake Stevens address to execute the search warrant. (Park

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 3
2:19-cv-00860-MJP

Dec., ¶2, Exh. A, Magan Depo., p. 18:06-09, 75:08-12, 90:05-08). Given that suspect Fisher was already in custody, the search warrant execution would be a "slow and deliberate" one. (Park Dec., Exh. B, Gonzalez Depo, p. 41:17-41:11). As SPD officers (some in full uniform with SPD insignia displayed) approached the front door of the Lake Stevens residence, Officer Nesteruk saw a person looking out from a second story window of the Lake Stevens residence. (Park Dec., ¶4, Exh. C, Nesteruk Depo., p.13:04-19; ¶3, Exh. B, Gonzalez Depo., p. 9:20-25). An SPD officer "knock[ed] and announce[d]" at the front door of the Lake Stevens address. (Park Dec., ¶3, Exh. B, Gonzalez Depo., p. 40:17 – 41:11). After no response, an SPD officer attempted to open the door using a key obtained from Fisher's personal property. The key did not work so an SPD officer "knock[ed] and announc[ed]" a second time. When there was again no response, Officer Gonzalez struck the door with a ram. On the second strike, the door was struck open. (Park Dec., ¶3, Exh. B, Gonzalez Depo., p. 40:17 – 41:11). Plaintiff Gill was found in the master bathroom on the second floor. (Park Dec., ¶3, Exh. B, Gonzalez Depo., p. 17:20-18:01; ¶2, Exh. A, Magan Depo., p. 78:10-16). After speaking to Ms. Gill, SPD determined that Ms. Gill had purchased the Lake Stevens residence several months prior and that Fisher no longer lived there. (Park Dec., ¶2, Exh. A, Magan Depo., p. 77:16 – 78:03). The only damage to Ms. Gill's residence was to the front door and door frame which had been struck with a ram to gain entry for execution of the search warrant. (Park Dec., ¶2, Exh. A, Magan Depo., p. 103:24-105:09).

## III.   LEGAL AUTHORITY AND ANALYSIS

### A.  Summary Judgment Standard

Summary judgment is appropriate if, viewing the evidence in the light most favorable to the nonmoving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *L.A. Printex Indus., Inc. v.*

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

*Aeropostale, Inc.* 676 F.3d 841, 846 (9th Cir.2012).  The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 – 51, 120 S. Ct. 2097, 147 L.Ed.2d 105 (2000). Uncorroborated allegations and "self-serving testimony" will not create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002).

**B.  Plaintiff Cannot Establish Unlawful Entry and Search as a Matter of Law**

Plaintiff claims Fourth Amendment violations under 42 U.S.C. §1983 for unlawful entry and search. (See Dkt. 31 at ¶44).  To maintain a cause of action under §1983, a plaintiff must show: (1) that she suffered a violation of her rights protected by the Constitution or created by federal statute, and (2) that the violation was proximately caused by a person acting under color of state law.  *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S. Ct. 1908 (1981); *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The Court should dismiss these claims for the reasons set forth below.

> **1.  *The Fourth Amendment is not violated when law enforcement executes a valid search warrant on an incorrect residential address where, as happened here, a reasonable effort was made to identify the correct address***

Probable cause "is not a high bar."  *Kaley v. United States*, 571 U.S. 320, 338, 134 S.Ct. 1090, 1103, 188 L.Ed.2d 46 (2014).  Legal precedent does not mandate any formulaic checklist that officers are required to satisfy to establish probable cause for a residential search warrant.

In *Blight*, where the detective officer determined the address for the search warrant (which upon execution of the search warrant was found to be the wrong address) through a "law enforcement database", plaintiff Blight argued that the detective officer failed to verify whether the suspect was an

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

owner, possessor, or renter of the property. *Blight v. City of Manteca*, 944 F.3d 1061, 1069 (9th Cir. 2019). The Ninth Circuit upheld the district court's summary judgment in defendant's favor, finding "DMV records and the database subscribed to by the Manteca Police Department reasonably constitute law enforcement databases and it was not necessary to determine with greater precision Ford's legal relationship to the property before representing that he lived there." *Blight*, 944 F.3d at 1069. The Ninth Circuit found probable cause for the search warrant in *Blight* even though it listed an incorrect residential address. There, the detective officers verified that address by: 1) checking a private database the Manteca Police Department subscribes to; (2) checking motor vehicle records; (3) receiving information from an informant as to the targeted address; and (4) driving to the property with the informant. *Blight*, 944 F.3d at 1063 - 64.

Similarly, the plaintiff in *Tucker* argued that the search warrants were invalid because "'probable cause necessarily requires investigation and confirmation of a suspect's address from multiple official sources.'" *Tucker v. City of Richmond*, 2012 WL 2571314 at *3 (N.D.Cal. Jul. 2, 2012). The Court rejected plaintiff's argument and instead found *even just one source of reliable information* to be sufficient: "The affidavit in this case shows that officers sought warrants for the address and person in question after the Contra Costa County Probation Department confirmed that suspect Marcel Buggs was on active probation and that Plaintiff's address was his last home address of record. Plaintiff has not cited any authority that would require officers to further investigate and verify an address that was provided to them by a reliable source and then ratified by a magistrate judge." *Id*. The Court in *Tucker* found, "[a] ruling to the contrary would create a standard for officers that would not be workable. Plaintiff's Section 1983 claim stemming from the issuance of the warrants – specifically, that Defendants had to conduct an investigation to verify the suspect's address after the

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

warrant was issued – is therefore not actionable." *Id*.  The Court in *Tucker* granted defendants' motion to dismiss plaintiff's §1983 claims.[1]

In *Powell v. Nunley*, 682 F.Supp.2d 1260, 1267 (W.D.Ok. 2010), the Court found that officers' search of the incorrect house did not violate the residents' Fourth Amendment rights.  In *Powell*, the Court found that officers who mistakenly executed an otherwise valid search warrant on the wrong property conducted a reasonable effort to ascertain and identify the proper location by checking the utility listing to confirm the address, driving to the street to pinpoint the house, and locating an outbuilding on the property identified by the informant.  *Powell*, 682 F.Supp.2d at 1267.

Although even one reasonable source would have been legally sufficient, Detectives Magan and Renihan relied on numerous sources of information to verify suspect Fisher's address.  *See* Section III.B.1, *infra*.  The multiple sources relied on by Detectives Magan and Renihan show a careful approach to address verification and more than meet the minimum set out in *Tucker* or *Blight*. *See* Section III.B.1, *infra*.

Not only did the individual defendants take reasonable steps to verify the address, SPD's practices are similarly in line with established legal precedent – neither dictating a mandatory checklist of investigative tools which must be used to establish probable cause for a search warrant.  Instead, SPD allows the unique circumstances of each investigation to dictate the steps taken by officers and detectives.  Here, Detectives Renihan and Magan, in line with established legal precedent and SPD

---

[1] For context, in *Tucker*, the Richmond Police Department had stormed into plaintiff's residence with a concussion grenade that caused an explosion.  *Tucker*, 2012 WL 2571314 at *1.  During the interrogation, officers learned that plaintiff and the other two residents had lived at that address for approximately one year.  The Richmond Police subsequently informed plaintiff that they were searching for a suspect whose mother had lived at the home for two or more years.  *Id*.  After realizing that plaintiff was not the individual they were looking for, the officers released him and left the home.  *Id*.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 7
2:19-cv-00860-MJP

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

practices, relied on more than one investigative tool when verifying the accuracy of the targeted residential address.

While just one reasonable source would have been legally sufficient, Detective Renihan relied on four sources of information to verify the accuracy of the targeted residential address: (1) a Driver and Plate Search (DAPS) for a vehicle registered to Steven Fisher, which showed a February 22, 2017 address update of "3 119TH DR SE LAKE STEVENS, WA 98258 Snohomish" (Renihan Dec., ¶2, Exh. A, DAPS Search, SEA001045 – SEA001047; Park Dec., ¶5, Exh. D, Renihan Depo., p. 49:03 – 50:09); (2) a search on the LINX database (Park Dec., ¶5, Exh. D, Renihan Depo., p. 50:4); (3) a search on the Accurint/Lexis database of the address "3 119 DR SE LAKE STEVENS WA 98258", which showed Steven Fisher as a resident for the date range "2003 – Aug 2017"[2] (Renihan Dec., ¶3, Exh. B, Accurint search, SEA001267; Park Dec., ¶5, Exh. D, Renihan Depo., p. 49:25-50:09); and (4) calling a United States Postal Inspector to inquire who receives mail at 3 119 Dr SE, Lake Stevens, WA and receiving an email from a USPIS Inspector stating that Steven Fisher is the only person that receives mail at that address.  (Renihan Dec., ¶4, Exh. C, Email from US Postal Inspector, SEA002911; Park Dec., ¶5, Exh. D, Renihan Depo., p. 43:13-18).

Detective Magan relied on the following information from Detective Renihan: (1) a search on the LINX database. (Park Dec., ¶2, Exh. A, Magan Depo., p. 33:04-07); (2) a search on the Accurint/Lexis database of the address "3 119 DR SE LAKE STEVENS WA 98258", which showed Steven Fisher as a resident for the date range "2003 – Aug 2017." (Park Dec., ¶2, Exh. A, Magan Depo., p. 32:23-33:07); and (3) that Detective Renihan received confirmation from a United States

---

[2] This Accurint search of the address "3 119 DR SE LAKE STEVENS WA 98258" also shows Nancy Gill as a resident for the date range "Jun 1997 – Aug 2017".  The search warrant was executed on August 22, 2017.  Detective Magan testified in his deposition: "I thought she [Nancy Gill] possibly could be Steven Fisher's mother." (Park Dec., ¶2, Exh. A, Magan Depo., p. 70:16-19).

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 8
2:19-cv-00860-MJP

Postal Inspector that Steven Fisher was receiving mail at 3 119 Dr. SE, Lake Stevens, WA. (Park Dec., ¶2, Exh. A, Magan Depo., p. 32:23-33:07).

Detective Magan independently relied on the following five sources of information: (1) a Washington State Department of Licensing (DOL) search of the name "Steven Fisher" (Magan Dec., ¶3, Exh.B, DOL Search, SEA001272; Park Dec., ¶2, Exh. A, Magan Depo., p. 32:23-33:07); (2) a Washington State Department of Licensing (DOL) search on a vehicle belonging to Steven Fisher (Park Dec., ¶2, Exh. A, Magan Depo., p. 32:23 – 33:07); (3) Fisher's statement to Detective Magan that the address on his driver's license is his current address (Park Dec., ¶2, Exh. A, Magan Depo., p. 27:18-21 and 39:16-40:08); (4) Fisher's statement to Detective Magan that he lives with his mother at the address on his driver's license (Park Dec., ¶2, Exh. A, Magan Depo., p. 27:18 – 28:01); and (5) the address listed on Fisher's driver's license. (Magan Dec., ¶4, Exh. C, Fisher Driver License, SEA001097 – SEA001098; Park Dec., ¶2, Exh. A, Magan Depo., p. 32:23-24).

The reliance on multiple sources of information by Detectives Renihan and Magan is a far cry from relying solely on a single source of information.  Case law does not dictate that Detectives Renihan and Magan needed to have consulted *every* available information source to establish probable cause for a search warrant.  As such, Detectives Renihan and Magan, through their reliance on multiple sources of information, established probable cause for the search warrant and the search warrant is valid under the Fourth Amendment.

### 2. *The search warrant was valid under the Fourth Amendment because it is supported by probable cause under a "totality of circumstances test"*

"The Court employs a 'totality of the circumstances test' to determine whether a search warrant is supported by probable cause." *Cassette v. King County*, 625 F.Supp.2d 1084, 1089 (W.D. Wash. 2008) (J. Pechman), citing *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). "This test requires 'a practical, common-sense decision whether, given all the circumstances set forth

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

1  in the affidavit, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay

2  information, there is a fair probability that contraband or evidence of a crime will be found in a

3  particular place.'" *Cassette*, 624 F.Supp.2d at 1089 citing *U.S. v. Feeney*, 984 F.2d 1053, 1055 (9th

4  Cir. 1993).

5      Here, applying "a practical, common-sense" approach to examining "all the circumstances set

6  forth in" Detective Magan's search warrant affidavit, the result is that "there is a fair probability that

7  contraband or evidence of a crime will be found in" the Lake Stevens address.  Detective Magan's

8  search warrant affidavit lays out in detail Fisher's impersonation of an F.B.I. agent at immigrant owned

9  money wiring businesses. (Magan Dec., ¶2, Exh. A, Magan Affidavit for Search Warrant, SEA000525

10  - SEA000535).  Detective Magan then proceeds in his affidavit to attest to the types of contraband or

11  evidence of crime likely to be found at Fisher's residence: "Your affiant, based upon his training [and]

12  30 years of work experience, has learned that in order to create fake law enforcement identification, it

13  is necessary to visit various law enforcement web sites and download images, specifically logos and

14  badges from those law enforcement agencies … I also learned … that the fake search warrant used in

15  the January incident was downloaded from the Internet." (Magan Dec., ¶2, Exh. A, Magan Affidavit

16  for Search Warrant, SEA000531).

### 3.   The search warrant was facially valid under the Fourth Amendment

18      To be valid under the Fourth Amendment, a search warrant must: (1) be based on probable

19  cause; (2) be supported by a sworn affidavit; (3) describe with particularity the place to be searched;

20  and (4) describe with particularity the persons or things to be seized.  *Levine v. City of Bothell*, 904

21  F.Supp.2d 1124, 1129 (W.D.Wash. 2012), citing *Groh v. Ramirez*, 540 U.S. 551, 557, 124 S. Ct. 1284,

22  157 L.Ed.2d 1068 (2004).

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 10
2:19-cv-00860-MJP

Here, the search warrant meets all four requirements: (1) the search warrant was based on probable cause; *See* Sections III.B.1, 2, 4, *supra*; (2) Detective Magan's sworn affidavit supported the search warrant. (Magan Dec., ¶2, Exh. A, Magan Affidavit for Search Warrant, SEA000525 - SEA000535); (3) the place to be searched was described with particularity: "Your affiant is requesting the court's permission to search the FISHERS residence, 3 119th Drive SE in Lake Stevens, Washington …" (Magan Dec., ¶2, Exh. A, Magan Affidavit for Search Warrant, SEA000532); and (4) the persons or things to be seized were described with particularity: "… to search for any computers (for historical internet search data, records and documents) printers and laminators, as well as any other counterfeit law enforcement documents, fake search warrants, logos and or badges as well as firearms, police equipment, a red colored dress shirt and dark suit as well as the computer hard drive from the Red Sea Financial Center." (Magan Dec., ¶2, Exh. A, Magan Affidavit for Search Warrant, SEA000532).

### 4. *Judge Lum's issuance of the warrant creates a presumption of probable cause and Plaintiff is unable to defeat that presumption*

A search warrant is presumed valid and "preference should be given to the validity of the warrant" and to the decision of the magistrate issuing it. *U.S. v. Schmidt*, 947 F.2d 363, 371 (9th Cir. 1991); *U.S. v. Burnes*, 816 F.2d 1354, 1357 (9th Cir. 1987). In other words, "the issuance of a warrant by a neutral magistrate, which depends on a finding of probable cause, creates a presumption that it was objectively reasonable for the officers to believe that there was probable cause, and a plaintiff who argues that a warrant was issued on less than probable cause faces a heavy burden." *Flagg v. Saben*, 2020 WL 5633836 at *7 (N.D.N.Y. Sept. 21, 2020), citing *U.S. v. Ventresca*, 380 U.S. 102, 109, 85 S. Ct. 741, 746, 13 L.Ed.2d 684 (1965); *See also United States v. Wade*, at *7 (D. Nev. March 7, 2019) ("A magistrate judge's determination of probable cause is accorded significant deference, and there is a 'presumption of validity with respect to the affidavit supporting the search warrant'").

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 11
2:19-cv-00860-MJP

"In order to mount such a challenge, the plaintiff must make a 'substantial preliminary showing' that the affiant knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit and that the allegedly false statement was 'necessary to the finding of probable cause.'" *Flagg*, 2020 WL 5633836 at *7, citing *Franks v. Delaware*, 438 U.S. 154, 155 – 56, 98 S. Ct. 2674, 2676, 57 L.Ed.2d 667 (1978).

Here, King County Superior Court Judge Dean Lum (a neutral magistrate)'s issuance of the search warrant to search the residence at "3 119th Drive SE in Lake Stevens, Washington" creates a presumption that it was objectively reasonable for Detectives Magan and Renihan to believe that there was probable cause. (Magan Dec., ¶2, Exh. A, Magan Affidavit for Search Warrant, SEA000521 – SEA000535).  A magistrate "need not determine that the evidence sought is *in fact* on the premises to be searched … only … that it would be reasonable to seek the evidence in the place indicated in the affidavit."  *U.S. v. Peacock*, 761 F.2d 1313, 1315 (9th Cir. 1985) (emphasis in original).

To mount a challenge to the presumption of probable cause here, Plaintiff must make a "substantial preliminary showing" that affiant Detective Magan knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit and that the allegedly false statement was "necessary to the finding of probable cause." *Flagg*, 2020 WL 5633836 at *7.

Here, Plaintiff is unable to make a "substantial preliminary showing" that Detective Magan "knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit." *Id.*  The record shows that Detective Magan, in good faith relied upon multiple sources of information, all of which were later found to be erroneous.[3]  At worst, Detective Magan's statements

---

[3] "[A] warrant is not invalid for Section 1983 purposes if it is 'based on seemingly reliable information which is later found to be erroneous.'" *Flagg v. Saben*, 2020 WL 5633836 at *7 (N.D.N.Y. Sept. 21, 2020), citing *Arroyo v. City of Buffalo*, 2018 WL 4376798 at *3 (W.D.N.Y. Sept. 13, 2018) quoting *Lewis v. City of Mt. Vernon, N.Y.*, 984 F.Supp. 748, 756 (S.D.N.Y. 1997) (citing *Illinois v. Rodriguez*, 497 U.S. 177, 184 (1990).

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 12
2:19-cv-00860-MJP

in his affidavit relating to where Fisher resided was a misstatement resulting from a good faith mistake. Detective Magan did not make any false statements in his search warrant affidavit.  That is, Detective Magan truthfully conveyed in his search warrant affidavit that: (1) Fisher told Detective Magan in an interview that he lives with his mother at 3119th Avenue Drive SE in Lake Stevens, Washington; (2) That address is the same address on Fisher's driver's license; and (3) That address is the same address Fisher provided to the King County Jail at booking. (Magan Dec., ¶2, Exh. A, Magan Affidavit for Search Warrant, SEA000531).  That it was later found upon execution of the search warrant that Fisher no longer resided at that Lake Stevens address does not render Detective Magan's statements in his search warrant affidavit false.

### 5.   *There was no judicial deception in obtaining the search warrant here*

Though not pleaded, Plaintiff seems to allude to a judicial deception claim. (See Dkt. 31, ¶24). "To make out a claim for judicial deception on summary judgment, the plaintiff must make a substantial showing that the defendant made a deliberate or reckless omission that was material to the finding of probable cause." *Blight*, 944 F.3d at 1069, citing *Chism v. Washington State*, 661 F.3d 380, 386 (9th Cir. 2011); *see also Fontana v. City of Federal Way*, 2013 WL 12066144 at *5 (W.D.Wa. Sept. 25, 2013).  "'Omissions or misstatements resulting from negligence or good faith mistakes will not invalidate an affidavit which on its face establishes probable cause.'" *Blight*, 944 F.3d at 1069, citing *U.S. v. Smith*, 588 F.2d 737, 740 (9th Cir. 1978).  Here, the Plaintiff would be unable to prevail on a judicial deception claim.

There is no evidence to establish that Detective Magan deliberately or recklessly made any false statements or omissions.  That is, Detective Magan did not make those statements pertaining to Fisher's address in his affidavit knowing that Fisher did not actually reside at the Lake Stevens address. *See* Section III.B.1, *supra*.  At worst, Detective Magan's statements in his affidavit relating to where

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

Fisher resided was a misstatement resulting from a good faith mistake.  Plaintiff here argues that Detective Magan failed to tell Magistrate Lum that Fisher possessed a P.O. box address.  (See Dkt. 31, ¶53).  However, just as the Ninth Circuit in *Blight* found immaterial that the affidavit there "did not mention that suspect Ford owned a second home in a different city," it is immaterial here that Fisher possessed a P.O. box address.  The Ninth Circuit in *Blight* found, "[a] criminal, like anyone else, can own or control more than one property." *Blight*, 944 F.3d at *1069.

If plaintiff makes the required showing of deception (which Plaintiff here failed to establish), "the court must determine the materiality of the allegedly false statements or omissions."  *Ewing v. City of Stockton*, 588 F.3d 1218, 1224 (9th Cir. 2009).  The Court would "purge those statements and determine whether what is left justifies the issuance of the warrant."  *Id*.  It is imperative to note that here, this step is not triggered because plaintiff failed to make the required showing of deception.  Plaintiff's allegations in that regard either have no basis in the record or are contradicted by the record.  Plaintiff alleges, "The affidavit for the warrant contained the following false information: 'During a brief interview with Fisher, he admitted he lives with his mother at 3 119th Avenue Drive SE in Lake Stevens Washington.  This is the same address on his driver's license and the same address he provided to King County Jail at booking.'" (See Dkt. 31, ¶24).  The record squarely contradicts those allegations by Plaintiff. *See* Section III.B.1., *supra*.

Plaintiff alleges that Detective Magan's search warrant affidavit omitted certain facts.  However, each omission that Plaintiff alleges is contradicted by the record or has no bearing on the search warrant's legitimacy.  Plaintiff alleges the following omissions: (1) "It [Detective Magan's affidavit] omitted Magan's belief that Fisher was being deceptive during the interview …". (See Dkt. 31, ¶24); (2) "It [Detective Magan's affidavit] omitted … that detective Renihan had listened to Fisher's mother's call to Steven Fisher". (See Dkt. 31, ¶24); (3) "The affidavit omitted the facts [*sic*]

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

that Snohomish County property records showed that the [*sic*] 3 119th Drive SE was sold to plaintiff Nancy Gill in May of 2017". (See Dkt. 31, ¶24); (4) "The application also failed to mention that Steven Fisher and Nancy Gill were only 9 years apart in age and Gill could not possibly be his mother." (See Dkt. 31, ¶24).

Each omission that Plaintiff alleges is contradicted by the record or has no bearing on the search warrant's legitimacy: (1) Detective Magan testified in his deposition that he "didn't have any reason to believe that he [Fisher] was lying" during his interview. (Park Dec., ¶2, Exh. A, Magan Depo., p. 25:12-24); (2) Not including in Detective Magan's search warrant affidavit that Detective Renihan had listened to Fisher's mother's call to Fisher has no bearing on the legitimacy of the search warrant as there is no evidence in the record showing that any pertinent information was gleaned from listening to those calls.; (3) Detective Magan testified in his deposition that he did not conduct any county property searches and that he was not informed by anyone of any county property searches. (Park Dec., ¶2, Exh. A, Magan Depo., p.54:05 – 55:15); (4) In response to a hypothetical, Detective Renihan testified in his deposition that "she [Nancy Gill] could have remarried. There's instances like that all the time of people that have – you know, their dad is older than them because their father married somebody else, their mother married somebody else." (Park Dec., ¶5, Exh. D, Renihan Depo., p. 138:08 – 139:21).

### 6. *The execution of the search warrant at Plaintiff's residence did not violate the Fourth Amendment*

A search of a residence is "presumptively reasonable if it is conducted pursuant to [a] search warrant issued by a lawful magistrate." *Bettin v. Maricopa Cty.*, 2007 WL 1713319 at *16 (D.Ariz. June 12, 2007) (finding that defendant Maricopa County Sheriffs' entry into plaintiff's home with a battering ram and the resulting property damage were justified and did not violate plaintiff's right to be free of unreasonable searches even though no evidence of criminal activity was found in plaintiff's

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 15
2:19-cv-00860-MJP

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

home and plaintiff was never charged with any crime regarding the alleged operation of a "chop shop" at her home) citing *U.S. v. Ventresca*, 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965).

### C.  Plaintiff Cannot Establish a Viable Unlawful Seizure/Detention

Plaintiff claims Fourth Amendment violations under 42 U.S.C. §1983 for unlawful seizure. (See Dkt. 31 at ¶48-50). To maintain a cause of action under §1983, a plaintiff must show: (1) that she suffered a violation of his/her rights protected by the Constitution or created by federal statute, and (2) that the violation was proximately caused by a person acting under color of state law.  *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S. Ct. 1908 (1981); *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The Court should dismiss these claims because Plaintiff cannot, as a matter of law, make the required showings under §1983.

### 1.  *Plaintiff Gill's detention was reasonable because a valid search warrant existed to search the Lake Stevens address and Ms. Gill was inside the residence when the search began*

"A detention for the duration of a search is generally reasonable when a warrant exists to search the residence and an occupant is inside the residence when the search begins." *Blight*, 944 F.3d at 1068.  Here, a valid warrant existed to search the Lake Stevens residence and Plaintiff Gill was inside the residence when the search began.  Plaintiff Gill does not allege that she was detained beyond the duration of the search.

"Whatever previously may have been thought to bear on the reasonableness of a detention incidental to a search, the United States Supreme Court recently held that '[a]n officer's authority to detain incident to a search is *categorical*; it does not depend on the 'quantum of proof justifying detention or the extent of the intrusion to be imposed by the seizure.'" *Dawson v. City of Seattle*, 435 F.3d 1054, 1066 (9th Cir. 20016) citing *Muehler v. Mena*, 544 U.S. 93, 125 S.Ct. 1465, 1470, 161

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

L.Ed.2d 299 (2005).  "We interpret the Supreme Court's language to mean that the duration of a detention may be coextensive with the period of a search and require no further justification." *Dawson*, 435 F.3d at 1066.  "Thus, the doctrine of *Michigan v. Summers,* permitting police officers to detain individuals during a search, and the principle of *Muehler*, holding that the authority to detain incident to search is categorical, apply to all searches upon probable cause …" *Dawson*, 435 F.3d at 1066; *See also Blight*, 944 F.3d at 1068 ("Officers have categorical authority to detain incident to a search").

In *Blight*, the Ninth Circuit found: "The officers had a warrant to search the mobile home. Thus, they had categorical authority to detain Blight, the occupant of the mobile home at the time of the search."  *Blight*, 944 F.3d at 1068.  In *Blight*, the address on the warrant being incorrect did not negate the Ninth Circuit's finding that officers executing the search warrant there had "categorical authority" to detain plaintiff Blight who was the occupant at the address at the time of the search. Applying the reasoning in *Blight* here, SPD had a warrant to search the Lake Stevens address. Thus, SPD had categorical authority to detain Ms. Gill, the occupant of the Lake Stevens home at the time of the search.

### 2.  *Plaintiff Gill's detention was constitutionally reasonable*

"The Supreme Court's precedents, and our [the Ninth Circuit's] own, establish that the police may detain a building's occupants while officers execute a search warrant as long as the detention is reasonable." *Dawson*, 435 F.3d at 1065, citing *Michigan v. Summers*, 452 U.S. 692, 704-05, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981). "To determine whether a detention incident to a search is constitutionally reasonable, we balance the law enforcement interests served by the detention against the public's privacy interests." *Dawson*, 435 F.3d at 1066 citing *Ganwich v. Knapp*, 319 F.3d 1115, 1120 (9th Cir. 2003).  "Since *Summers*, we [the Ninth Circuit] have recognized that detaining a building's occupants serves at least three law enforcement interests: first, detention prevents a suspect

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

from fleeing before the police discover contraband; second, detention minimizes the risk that an officer or an occupant might be harmed during the search; and third, detention often expedites a search." *Dawson*, 435 F.3d at 1066, citing *Summers*, 452 U.S. at 700.

Similar to Plaintiff Gill, the plaintiff in *Blight* argued that her detention for the duration of the search was unreasonable under the Fourth Amendment because of her age, the lack of evidence linking her to the criminal activity, and the length of time of the detention.  Plaintiff Gill's argument that *she* was not suspected of criminal activity are irrelevant.  "The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought."  *U.S. v. Adjani*, 452 F.3d 1140, 1146 (9th Cir. 2006), citing *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978). Since the law enforcement team executing the search warrant relied on information in the valid search warrant, it was reasonable for the team to believe that evidence of Fisher's crimes might be found at the residence and to detain Ms. Gill.  In *Blight*, the Ninth Circuit found that the detention of plaintiff Blight "for the duration of the search – no longer than one hour … is not an unreasonable length of time …".  *Blight*, at 1068. Here, SPD detectives and officers were at the Lake Stevens residence for less than an hour.  (Park Dec., ¶2, Exh. A, Magan Depo., p. 86:21-23).

Additionally, the manner of Ms. Gill's detention was not unreasonable in any way.  Although Ms. Gill claims that she was painfully handcuffed, the record does not support her claim.  Even if Ms. Gill had been handcuffed, the detention would still have been reasonable as a matter of law.  See *Muehler v. Mena*, 544 U.S. 93, 102, 125 S.Ct. 1465 (2005) (officers acted reasonably in detaining occupant in handcuffs for two to three hours while search was in progress, given the fact that the warrant sought weapons and evidence of gang membership).  "Inherent in … [the] authorization to detain an occupant of the place to be searched is the authority to use reasonable force to effectuate the

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 18
2:19-cv-00860-MJP

detention." *Muehler*, 544 U.S. at 93.  Just as the Ninth Circuit in *Blight* rejected plaintiff Blight's arguments, Plaintiff Gill's unlawful seizure/detention claim here should likewise fail.  *Blight*, 944 F.3d at 1068.  Additionally, any force used would be *de minimis*.

Here, given that probable cause existed for the search, Plaintiff's detention was reasonable and did not violate Plaintiff's rights under the Fourth Amendment.

### D.  Plaintiff Cannot Establish False Arrest as a Matter of Law

Plaintiff claims that "[t]he conduct of defendant officers in detaining and arresting plaintiff constitutes false imprisonment of plaintiff. There was no probable cause for the arrest[4]." (See Dkt. 31 at ¶66).  Plaintiff fails to specify whether her false arrest claim is brought under §1983 or Washington common law. (See Dkt. 31 at ¶65 – 69).  This claim fails either way.

To prove a claim of false arrest, plaintiff must show Defendants arrested Ms. Gill without probable cause. *See Michigan v. Summers*, 452 U.S. 692, 700 (1981); *Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998).  Probable cause exists when the totality of the circumstances within an officer's knowledge would cause a reasonably prudent person to believe that a crime has been or is being committed.  *Lassiter v. City of Bremerton*, 556 F.3d 1049, 1053 (9th Cir. 2009).  Probable cause is an absolute defense to a claim of false arrest and false imprisonment.  *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995); *Hanson v. City of Snohomish*, 121 Wn.2d 552, 563-64; 852 P.2d 295 (1993).

Here, as previously outlined, probable cause existed for the search warrant. *See* Sections III. B.1, 2, 4, *supra*.  As such, Ms. Gill's false arrest and false imprisonment claims must be dismissed. *Cassette*, 625 F.Supp.2d at 1090 citing *Hanson v. City of Snohomish*, 121 Wn.2d 552, 563, 852 P.2d

---

[4] Plaintiff was never actually handcuffed. (Park Dec., ¶3, Exh. B, Gonzalez Depo., p. 19:17-22; ¶2, Exh. A, Magan Depo., p. 90:22 – 91:03).

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 19
2:19-cv-00860-MJP

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

295 (1994) ("Because the affidavit supports probable cause, Ms. Cassette's false imprisonment and false arrest claims must be dismissed").

### E.  Plaintiff Cannot Establish Unlawful Search as a Matter of Law

Plaintiff claims that "[t]he actions of all defendant officers in searching plaintiff's home deprived her of her right to be free from unlawful search."[5] (See Dkt. 31 at ¶71).  Plaintiff fails to specify whether her unlawful search claim is brought under §1983 or under article I, section 7 of the Washington Constitution. (See Dkt. 31 at ¶70 – 72).  Regardless, Plaintiff's claim fails.  There is no private right of action under the Washington Constitution.  The Washington state constitution does not create a cause of action for money damages, without the aid of augmentative legislation. *Amusement v. State*, 7 Wn. App. 516, 517, 500 P.2d 1253 (1972).

### F.  The Individual Defendants Are Entitled to Qualified Immunity

Even if the Court found a genuine issue of material fact regarding the §1983 claims against the officers, dismissal would still be appropriate because they would be entitled to qualified immunity.  Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Here, there is no clearly established law that would have told any objectively reasonable detective in Detectives Magan and Renihan's position that their actions were unconstitutional.  Particularly, any reasonable officer investigating the address of a suspect for purposes of obtaining a search warrant would have believed that his/her efforts at consulting numerous sources of information, including but not limited to law enforcement databases and a U.S. Postal Inspector, were sufficient

---

[5] Plaintiff brings a claim for unlawful entry and search under §1983. (See Dkt. 31 at ¶44).  *See* Section B, *supra*, for a discussion of why Plaintiff's unlawful entry and search claim fails under §1983.

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

and did not violate any individual's constitutional rights.  As to Officer Gonzalez, there is no clearly established law that would have told any objectively reasonable officer in Officer Gonzalez's position (that is, an officer who is part of a team executing a search warrant issued by a judge on probable cause) that his actions were unconstitutional.  Particularly, any reasonable officer who is part of a team executing a search warrant issued by a judge on probable cause would have no reason to question the warrant's validity. *See Tucker*, 2012 WL 2571314 at *6, fn. 5 ("The 15 officers that entered [p]laintiff's residence were unlikely to know anything about the targeted suspect or the residents of house they were searching.  Instead, they were given orders by their superiors that a magistrate judge had issued warrants that they were required to execute … officers … cannot be required to ignore their superiors' orders, question the details of the warrants, or delay the execution of the warrants by conducting their own investigation to corroborate them").  Even if any of the individual officers handcuffed Plaintiff, any reasonable officer executing a valid search warrant would have no reason to believe that handcuffing an individual found within the residence is unconstitutional.  The Court should grant qualified immunity to the defendant officers.

### G.  Plaintiff Cannot Establish a *Monell* Claim as a Matter of Law

Plaintiff also alleges a *Monell* claim, which would require that Defendant City of Seattle, through its "acts, omissions, policies, customs, and ratification", failed to prevent the violation of Plaintiff's constitutional rights. (*See* Dkt. 31 at ¶57-61).  *See Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 690 – 91, 98 S. Ct. 2018, 56 L.Ed.2d 611 (1978).  Absent a formal governmental policy, a plaintiff must show a "longstanding practice or custom which constitutes the standard operating procedure of the local government entity." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).  An unconstitutional policy need not be formal or written to create municipal liability under §1983; however, it must be so permanent and well settled as to constitute a custom or usage with the

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

force of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167 – 68, 90 S. Ct. 1598 (1970).  There is no such evidence here.  Further, "[a] plaintiff cannot prove the existence of a municipal policy or custom based solely on the occurrence of a single incident of unconstitutional action by an employee." *Davis v. City of Ellensburg*, 869 F.2d 1230, 1233 – 34.

Plaintiff's *Monell* claim fails because nothing in the record supports an unconstitutional custom, practice, or policy.  *See Tillett v. City of Bremerton,* 2012 WL 699368 at *3 (9th Cir. Mar. 6, 2012) (finding that appellants "have presented no evidence supporting their claim that either the City or the officers ignored the procedures for executing a search warrant" and that "[a]bsent competent evidence demonstrating that the City had a policy, practice, or custom that constituted a constitutional injury, the City is not liable for monetary damages in a §1983 suit."). SPD's Fed. R. Civ. P 30(b)(6) witness Sergeant Brandon James explained that "… there's not a checklist, per se, for applying for a residential search warrant, no." (Park Dec., ¶6, Exh. E, James Depo., p. 18:11-14).  SPD practices consist of relying *on more than one* investigative tool: "I would use that piece of information combined with other pieces of information, if it's databases, statements from folks – individuals involved, other pieces. I just wouldn't use one piece of information for writing a search warrant." (Park Dec., ¶6, Exh. E, James Depo., p. 17:21-18:07).  Further, because no constitutional violation occurred, Plaintiff's *Monell* claim fails as a matter of law.  *Monell*, 436 U.S. at 692.

### H.  Plaintiff Cannot Establish Negligence as a Matter of Law

Plaintiff claims that "Defendants were negligent in failing to recognize that neither Mr. Fisher, nor any of his family members lived at [P]laintiff's address and that [P]laintiff was not the target or the object of the search warrant". (See Dkt. 31 at ¶63).  Negligence requires proof of: (1) the existence of a duty owed to a complaining party; (2) a breach thereof; (3) a resulting injury; and (4) a proximate cause between the claimed breach and resulting injury.  *King v. Garfield Cty. Public Hosp. Dist. No.*

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

*I*, 15 F.Supp.3d 1111, 1115 (E.D. Wash. 2014).  Here, Plaintiff is unable to satisfy the elements of her negligence claim given that Plaintiff fails to allege or establish any duty owed by Defendants to Plaintiff.  Further, the existence of probable cause negates any duty or breach here.  *See* Sections III.B.1, 2, 4, *supra*.  Additionally, "the success of [plaintiff]'s … negligence claims turned on the validity of the search warrant executed on Florea's residence." *Florea v. Clark Cty., Wash.*, 8 F.3d 26, 1993 WL 385426 at *1 (9th Cir. Sept. 29, 1993).  Here, given the valid search warrant, plaintiff's negligence claim fails. *Id*. at *1.

## I.   Plaintiff Cannot Establish Trespass as a Matter of Law

Plaintiff claims that "[t]he actions of defendants and each of them in entering plaintiff's home without her permission or consent constitute trespassing …" (See Dkt. 31 at ¶74).  Plaintiff here cannot establish trespass as a matter of law because SPD's entry into Plaintiff's property was pursuant to a valid search warrant supported by probable cause.  *Tensley v. City of Spokane*, 267 Fed.Appx. 558, 2008 WL 423403 at **2 (9th Circ. 2008) (finding that officers' entry into property pursuant to a valid search warrant precluded a trespass claim under Washington law); *See also Walker v. City of Kennewick*, 109 Wn. App. 1017, 2001 WL 1434692 (2001).

## J.   Plaintiff Cannot Establish Battery as a Matter of Law

Plaintiff claims that "Defendants Magan and Gonzalez acted with the intent to cause and did in fact cause offensive contact with plaintiff by grabbing plaintiff and handcuffing her behind her back." (See Dkt. 31 at ¶77).  "A battery is an intentional harmful or offensive bodily contact with another person" and "[a] person is liable for battery if he or she intends to cause a harmful or offensive contact and such a contact directly or indirectly results." *Reagan v. Newton*, 7 Wn.App.2d 781, 800 (2019).  Here, even though there is disagreement over whether the handcuffing occurred, it is not a material question, because any handcuffing would have been legally permissible law enforcement

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 23
2:19-cv-00860-MJP

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

action, rather than battery. (Park Dec., ¶2, Exh. A, Magan Depo., p.90:22 – 91:03; ¶3, Exh. B, Gonzalez Depo., p.19:17-22); See *Muehler v. Mena*, 544 U.S. 93, 102, 125 S.Ct. 1465 (2005) (officers acted reasonably in detaining occupant in handcuffs for two to three hours while search was in progress, given the fact that the warrant sought weapons and evidence of gang membership).

### K.  Plaintiff Cannot Establish Respondeat Superior as a Matter of Law

Plaintiff claims that "[i]n doing the things herein alleged, defendant officers were acting within the course and scope of their employment with the City of Seattle.  The City of Seattle is therefore liable for the conduct of the defendant officers." (See Dkt. 31 at ¶82).  "[T]here is no respondeat superior liability in the context of [S]ection 1983." *Crisman v. Pierce Cty. Fire Protection Dist. No. 21*, 115 Wn.App. 16, 60 P.3d 652 (2002); *See also Triplett v. Wash. State Dept. of Soc. & Health Servs.*, 193 Wn.App. 497, 373 P.3d 279 (2016).  "And the plaintiff must prove more than a single incident to impose liability on a municipality for unconstitutional activities unless the single incident demonstrates an existing, unconstitutional municipal policy." *Crisman*, 115 Wn.App. at 25.  Given that there is no respondeat superior in the context of §1983 and given that Plaintiff Gill complains about a single incident rather than a legally problematic policy, she cannot establish respondeat superior as a matter of law.  Accordingly, this Court should dismiss Plaintiff's respondeat superior claim.

### IV.  CONCLUSION

This Court should grant Defendants' Motion for Summary Judgment and dismiss Plaintiff's case with prejudice.

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

1    DATED this 17th day of December, 2020.

2                              PETER S. HOLMES
                             Seattle City Attorney

3

4              By:   */s/ Susan Park*_____
                      Susan Park, WSBA# 53857

5                     Ghazal Sharifi, WSBA# 47750
                      Assistant City Attorneys

6
                      E-Mail:  Susan.Park@seattle.gov
7                     E-Mail:  Ghazal.Sharifi@seattle.gov

8                     Seattle City Attorney's Office
                      701 Fifth Avenue, Suite 2050
9                     Seattle, WA 98104
                      Phone:  (206) 684-8200

10
                      *Attorneys for Defendants City of Seattle, Michael Magan,*
11                    *Michael Gonzalez and Timothy Renihan*

12

13

14

15

16

17

18

19

20

21

22

23

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 25
2:19-cv-00860-MJP

1

2

## CERTIFICATE OF SERVICE

I hereby certify that on December 17, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| Darryl Parker, WSBA# 30770<br>Civil Rights Justice Center, PLLC<br>2150 N. 107th Street, Suite 520<br>Seattle, WA 98133<br><br>*[Attorney for Plaintiff]* | ( x )  Via Email<br>DParker@civilrightsjusticecenter.com<br>jhenderson@civilrightsjusticecenter.com<br>kbasu@civilrightsjusticecenter.com<br>adiaz@civilrightsjusticecenter.com<br>pandrews@civilrightsjusticecenter.com |
|---|---|

/s/Marisa Johnson_____
Marisa Johnson, Legal Assistant

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 26
2:19-cv-00860-MJP