1

2

3

4

5

6

7

8                             UNITED STATES DISTRICT COURT
                            WESTERN DISTRICT OF WASHINGTON
9                                      AT SEATTLE

10   NANCY GILL,                                    CASE NO. C19-860 MJP

11                        Plaintiff,                ORDER ON MOTION FOR
                                                    SUMMARY JUDGMENT AND
12          v.                                      MOTION TO EXCLUDE

13   MICHAEL MAGAN, et al.,

14                        Defendants.

15

16          This matter comes before the Court on Defendants' Motion for Summary Judgment (Dkt.

17   No. 55) and Motion to Exclude the Opinion of Gregory Gilbertson (Dkt. No. 59). Having

18   reviewed the Motions, the Oppositions (Dkt. Nos. 63, 68), the Replies (Dkt. Nos. 71, 74), and all

19   supporting materials, the Court GRANTS in part and DENIES in part the Motion for Summary

20   Judgment and DENIES the Motion to Exclude.

21                                      **BACKGROUND**

22          This case arises out of the Seattle Police Department's misguided efforts to find evidence

23   of robberies that detectives Michael Magan and Timothy Renihan suspected Steven Fisher of

24

1  committing while posing as an FBI agent. Based on what the Court notes was contradictory

2  evidence, Magan and Renihan identified and obtained a warrant to search a home at 119th Drive

3  SE in Lake Stevens, Washington where they believed Fisher resided. But when they executed the

4  warrant and knocked down the door, they found Plaintiff Nancy Gill, alone, terrified, and

5  without any connection to crimes.

6       Gill brings claims against Defendants Magan, Renihan, Michael Gonzalez, and the City

7  of Seattle under 42 U.S.C. § 1983 for (1) unlawful entry and search in violation of the Fourth

8  Amendment; (2) unlawful seizure without probable cause in violation of the Fourth Amendment;

9  (3) "failure to prevent" unlawful seizure in violation of the Fourth Amendment; (4) <u>Monell</u>

10 liability for failure to train. She also brings state law claims of: (1) negligence; (2) false arrest;

11 (3) unlawful search; (4) trespass (which she now abandons); (5) battery; and (6) respondeat

12 superior liability for the City of Seattle.

13      Defendants seek summary judgment on the theory that the search warrant was valid and

14 that any detention or damages flowing from the execution of the search warrant were

15 permissible. Gill challenges the validity of the probable cause showing and points to facts

16 supporting her claim of judicial deception. The Court reviews the pertinent evidence.

17 **A.    Warrant Application**

18      At around 7:00 PM on August 21, 2017, one day before the raid at Gill's home, Magan

19 finalized his search warrant affidavit. The affidavit described the crimes he suspected Fisher of

20 committing and the evidence he hoped to locate at Fisher's home, his car, and a briefcase officers

21 had seized. Magan's affidavit identified Fisher's residence based on the following:

22      During a brief interview with Fisher, he admitted he lives with his mother at 3 119th
        Avenue Drive SE in Lake Stevens Washington. This is the same address on his driver's
23      license and the same address he provided to King County Jail at booking.

24

(Ex. A to the Decl. of Michael Magan (Dkt. No. 56-1 at 12).) The source of this information requires some examination.

Magan claims that Fisher told him during an interview on the morning of August 21, 2017, that he "was currently living with his mother in a new residence in Lake Stevens, Washington." (Magan Dep. at 30 (Dkt. No. 64-1); id. at 28 ("[Fisher] said he was living with his mother, new house or new place with his mother.").) Magan also testified that Fisher confirmed his drivers' license listed his correct residence. (Magan Dep. at 30.) The address listed on his license was "3 119th Drive SE, Lake Stevens 98258." (Magan Decl. Ex. C (Dkt. No. 56-3).) The license was issued in September 2016, and Magan checked the license in the Department of Licensing database. (Magan Decl. ¶ 3 (Dkt. No. 56); id. Ex. B (Dkt. No. 56-2).) Magan also claims that he reviewed the "Superform" from King County Jail, which also listed this same address. (Second Magan Decl. ¶ 3 (Dkt. No. 73); id. Ex. A (Dkt. No. 73-1).)

Renihan also conducted four inquiries into Fisher's residence and Defendants aver that "Magan relied on" this information. (Mot. at 8 Dkt. No. 55.) First, Renihan ran a "Driver and Plate Search" (DAPS) search for the car registered to Fisher, which matched the 119th Drive SE residence. (Renihan Decl. ¶ 2 & Ex. A (Dkt. No. 57).) Second, he ran the same DOL search Magan had run, as well as a LINX search that showed a 2006 driving offense for Fisher. Third, Renihan made an inquiry of a postal inspector as to who received mail at the 119th Drive SE residence. (Id. ¶ 4 & Ex. C (Dkt. No. 57).) After the search warrant had issued, but before the raid, the inspector stated that "Steven Fischer gets mail" there and "[t]here were no other names for that address." (Id. Ex. C (Dkt. No. 57-3).) This was a different last name than the suspect, who spells his name without a "c." Fourth, Renihan conducted an Accurint/Lexis search for the address at 119th Drive SE, which produced a list of persons associated with the property. (Id. ¶ 3

& Ex. B (Dkt. No. 57).) The Accurint report showed Fisher living at the residence for 14 years, from 2003 to Aug. 2017. It also showed Nancy Gill as a resident from April 2017 through June 2017. The report also showed that Gill was only 9 years older than Fisher. And the report showed Teresa Fisher (3 years older than Fisher) had lived at the same residence from May 2014 to August 2017.

Magan submitted his search warrant affidavit for approval to Superior Court Judge Dean Lum. Judge Lum stated that he was contacted telephonically by Magan and that he swore Magan in to confirm that the affidavit was true and accurate. (Magan Decl. Ex. A (Dkt. No. 56-1 at 5).) Judge Lum wrote "I reviewed that affidavit and the proposed warrant, find probable cause to issue the warrant and authorize Det Magan to affix my signature to it." (Id.) The email is dated 8:55 PM August 21, 2017.

**B.    Search of 119th Drive SE**

After the warrant issued, but before it was executed, Renihan learned more information about Fisher's mother. First, in the morning of the 22nd he spoke with the manager of a storage unit registered to Fisher. (Renihan Dep. at 68.) The manager told him that a person named Margaret Zemak claimed to be Fisher's mother and wanted to get things out of the unit. (Id.) Second, Renihan had monitored 11 calls Fisher made to his mother from jail, including about a storage unit, and noted the phone number of the mother. (Id. at 57-58, 63-64.) He told Magan about the call Fisher made to his mother about the storage unit. (Id. at 68-70; Magan Dep. at 51.) Renihan never ran a check of the phone number of Fisher's mother or her name before executing the warrant. (Renihan Dep. at 66.)

On August 22, 2017 at 1:30PM, Magan, Renihan, and Gonzalez, along with the Snohomish County Sheriff and the FBI executed the warrant at 119th Drive SE. After knocking

and hearing no answer, the officers broke down the front door. Gill was alone at home and was just blow-drying her hair after showering in her upstairs bathroom. (Gill Decl. ¶ 13.) She recalls hearing: "Police with a search warrant, drop the weapon and open the door." (Id.) But she claims that before she could put down her hairdryer the officers entered her house saying: "We know you are in there, drop the weapon and come out with your hands up." (Id.) She was terrified and tried to stay quiet in her bathroom. (Id.) Magan located Gill in the bathroom and ordered her to open the door. (Id. ¶ 16.) Magan then arrested Gill at gunpoint and put her in handcuffs. (Id. ¶ 17.) Gill claims the handcuffing was particularly painful due to a spinal fusion surgery. (Id. ¶¶ 17-18.) Gill told Magan she had no idea who Fisher was and that she was actually friends with the head of the SPD Robbery Unit, Eric Barden. (Id. ¶¶ 19-20.) Gill was then released. (Id. ¶ 20.) She claims officers damaged her home and she suffered emotional distress from the incident.

## ANALYSIS

**I.      Motion for Summary Judgment**

**A.      Legal Standard**

      Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-50 (1986); Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. Anderson, 477 U.S. at 248. The moving party bears the initial burden of showing that there is no evidence which supports an element essential to the nonmovant's claim. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the movant has

1    met this burden, the nonmoving party then must show that there is a genuine issue for trial.

2    Anderson, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine

3    issue of material fact, "the moving party is entitled to judgment as a matter of law." Celotex, 477

4    U.S. at 323-24.

5    **B.     Probable Cause to Authorize the Search Warrant**

6          Gill argues that there was insufficient probable cause to support the search warrant. The

7    Court disagrees.

8          "While there is no 'numerically precise degree of certainty corresponding to probable

9    cause, . . . it is clear that only the probability, and not a prima facie showing, of criminal activity

10   is the standard of probable cause.'" Chism v. Washington State, 661 F.3d 380, 389 (9th Cir.

11   2011) (quoting Illinois v. Gates, 462 U.S. 213, 235 (1983)). The Court is thus instructed to assess

12   probable cause based on the "totality-of-the-circumstances" to determine if there is a "fair

13   probability" that evidence of a crime will be found at the target location. See Gates, 462 U.S. at

14   230, 238. Compliance with the Fourth Amendment requires the warrant to: (1) demonstrate

15   probable cause, (2) be supported by a sworn affidavit, and (3) describe with particularity both the

16   place of the search and the persons or things to be seized. See Groh v. Ramirez, 540 U.S. 551,

17   557 (2004).

18         Based on the four corners of the warrant affidavit, the Court finds that there was probable

19   cause to search the home for the items listed. The affidavit laid out in detail the crimes Magan

20   suspected Fisher of committing and the evidence detectives hoped to locate. Based on the totality

21   of the circumstances, there was a reasonably probability that the evidence would be found at

22   Fisher's house. Magan provided evidence confirming the address from three sources: (1) Fisher

23   stated said he lived there; (2) Fisher's driver's license listed that same address; and (3) the

24

1    information at King County Jail booking listed this same address. (Ex. A to the Decl. of Michael

2    Magan (Dkt. No. 56-1 at 12).) Based on this information, there was a "fair probability" that the

3    evidence of the crime could be located at the address listed.

4    **C.    Judicial Deception**

5          Gill argues that the search warrant is invalid due to Magan's reckless omissions of

6    material facts regarding the target location. The Court finds that Gill has made the necessary

7    showing to preclude summary judgment on account of judicial deception.

8          **1.    Judicial Deception Standards**

9          "To make out a claim for judicial deception on summary judgment, the plaintiff must

10   make a substantial showing that the defendant made a deliberate or reckless omission that was

11   material to the finding of probable cause." Blight v. City of Manteca, 944 F.3d 1061, 1069 (9th

12   Cir. 2019) (citing Chism, 661 F.3d at 386). But "'[c]lear proof of deliberat[ion] or reckless[ness]

13   is not required' at the summary judgment stage." Chism, 661 F.3d at 387–88 (quoting United

14   States v. Stanert, 762 F.2d 775, 781 (9th Cir.), amended by 769 F.2d 1410 (9th Cir. 1985)). If the

15   plaintiff makes a substantial showing of reckless false statements or omissions, "the question of

16   intent or recklessness is a factual determination that must be made by the trier of fact. Id.

17   (quotation and citation omitted). But "[o]missions or misstatements resulting from negligence or

18   good faith mistakes will not invalidate an affidavit which on its face establishes probable cause."

19   United States v. Smith, 588 F.2d 737, 740 (9th Cir. 1978). And while reckless inclusion of false

20   statements can support a judicial deception claim, "erroneous assumptions on the basis of the

21   information" the affiant received in drafting the warrant affidavit are not actionable. Id.

22         Whether false statements or omissions in a warrant affidavit are material is a legal

23   question answered by examining if "'the affidavit, once corrected and supplemented,' would not

24

1    have provided a magistrate judge with a substantial basis for finding probable cause." <u>Chism</u>,

2    661 F.3d at 388 (quoting <u>Stanert</u>, 762 F.2d at 782).

3        **2.    Reckless Omissions**

4        Construing the evidence in Gill's favor, the Court finds she has made a substantial

5    showing that the warrant affidavit recklessly omitted contradictory information Magan knew

6    about Fisher's residence that undermined the probable cause showing.

7        Magan's affidavit identified Fisher's residence based on only the following:

8        During a brief interview with Fisher, he admitted he lives with his mother at 3 119th
         Avenue Drive SE in Lake Stevens Washington. This is the same address on his driver's
9        license and the same address he provided to King County Jail at booking.

10   (Ex. A to the Decl. of Michael Magan (Dkt. No. 56-1 at 12).) This omitted at least three

11   important pieces of information known to Magan.

12       First, Magan made no mention of the conflict between Fisher's statement that he "was

13   currently living with his mother in a <u>new</u> residence in Lake Stevens, Washington" which he

14   claimed was listed on his license and the Accurint report showing he lived at this same home for

15   fourteen years. (<u>Compare</u> Magan Dep. at 30 (emphasis added) <u>with</u> Dkt. No. 64-2 at 26.) By not

16   disclosing the conflict between Fisher's statement and the Accurint report, Magan misled the

17   Judge as to the accuracy of information linking Fisher to the 119th Drive SE house. It called into

18   question the accuracy of the drivers' license and booking information whose source is unknown.

19   As Magan admitted, license information does not tell the length of residency. (Magan Dep. at

20   33:20-22 (Dkt. No. 58-1 at 16).) And as another officer testified, "DOL is not always accurate"

21   because "[p]eople change addresses from time to time and don't always report it to the

22   Department of Licensing." (Dep. of Shandy Cobane at 35:20-25; <u>see id.</u> at 36:1-15 (Dkt. No. 64-

23   1 at 29-30).) When Magan was confronted with this potential contradiction, he testified that "I

24   didn't give it a thought." (Magan Dep. at 30:18.) Magan should have.

1          Second, Gill argues that Magan recklessly failed to investigate apparent inconsistencies

2    between the information Fisher provided about residing with his mother. Specifically, Magan did

3    not confirm who Fisher's mother was or where she lived despite Fisher stating he lived with her

4    and the name of Nancy Gill appearing on the Accurint report. (Magan Dep. at 31.) Magan was

5    aware that Gill was listed on the Accurint report, but merely assumed that she was Fisher's

6    mother despite being only 9 years older. (See Def. Mot. at 8 n.2; Renihan Dep. at 87, 138.)

7    (Magan Dep. at 74.) At a bare minimum this should have prompted further investigation

8    particularly given the minimal age difference that could have only made Gill the mother by

9    marriage. Magan even knew the mother's phone number from 11 calls Fisher made from jail, but

10   took no action. (Dkt. No. 64-2 at 27-28.) Magan also could have looked to see if Gill had any

11   relation to Fisher or whether she was a new owner of the property using the Snohomish County

12   parcel viewer. Construing this in Gill's favor, this supports her showing of a reckless omission.

13         Third, Gill argues that Magan failed to reveal that he believed Fisher was untrustworthy

14   and had repeatedly lied to officers. Construing the evidence in the light most favorable to Gill,

15   the Court agrees. Renihan himself found Fisher to be dishonest: "Based on the information I had

16   on Mr. Fisher, I didn't believe he was an honest individual." (Renihan Dep. at 60: 15-22.) And as

17   to whether Fisher "stated he was living with his folks" Renihan answered "Well, that's what he

18   stated . . . [a]nd whether that's true or not, we don't know that." (Renihan Dep. at 60:5-8 (Dkt.

19   No. 64-1 at 43.) Magan also found Fisher to be dishonest about the alleged crimes. (Parker Decl.

20   ¶ 7 (Dkt. No. 64).) But he maintains that he believed Fisher was truthful about his residence,

21   even though he never explains why he held that belief. (Id.) Construing this evidence in the light

22   most favorable to Gill, it was improper to withhold the officer's concerns about Fisher's

23   reliability.

24

ORDER ON MOTION FOR SUMMARY JUDGMENT AND MOTION TO EXCLUDE - 9

1    Gill unsuccessfully argues that Magan falsified the King County Jail booking

2    information. It is true that Fisher's "Booking Sheet" created two days before the warrant

3    application lists his "address" as "PO Box 943 Lake Stevens, WA 98258." (Parker Decl. Ex. L

4    (Dkt. No. 64-2 at 8).) But Magan's declaration filed with the Reply avers that he relied on a King

5    County Jail "Superform" created at the same time showing Fisher's address at 119th Drive SE.

6    (Second Magan Decl. ¶ 7 (Dkt. No. 73).) This undermines Gill's argument, though the Court

7    notes that Magan has not stated whether or not he reviewed the Booking Sheet. Similarly, Gill

8    fails to show that Magan reviewed the "Conditions of Release" Order (Parker Decl. Ex. M. (Dkt.

9    No. 64-2 at 11)) or the FBI Criminal Justice Information sheet which also listed the PO Box

10   address for Fisher (id. at 13).

11    And construing the evidence in Gill's favor, Defendants have not convinced the Court

12   Renihan and Magan performed an adequate investigation and disclosed sufficient information on

13   the warrant affidavit. None of the investigation performed resolved the obvious contradictions in

14   the Accurint report and Fisher's own statements or his unreliability as a witness. And the

15   information Renihan received from the Postal Inspector is inadequate because it identified a

16   different "Steven Fischer," not the suspect Steven Fisher. (Dkt. No. 64-2 at 33-4; Dkt. No. 64-2

17   at 80.) And the information was only obtained after the warrant issued. Similarly, the two cases

18   Defendants rely on are factually distinguishable. First, the facts in Blight are distinguishable and

19   it contains no broad pronouncement that driving records alone are always sufficient to identify a

20   target residence. 944 F.3d 1061. At best the court suggested that the failure to confirm legal

21   ownership of property is not relevant if the officer uses another reliable police database to check

22   residency. No such reliable database was used here to investigate the obvious inconsistencies in

23   the information known by Magan and Renihan. Second, Tucker v. City of Richmond, No. C 12–

24

1829 MEJ, 2012 WL 2571314 (N.D. Cal. July 2, 2012), differs markedly from the facts

presented in this case. In Tucker, the Court found no deception where the affidavit relied on

information from the probation department that the suspect was on active probation and lived at

the target location. 2012 WL 2571314, at *3. No such similarly reliable information was cited in

this case.

Construing the evidence in the light most favorable to Gill, the Court finds she has made

a substantial showing that Magan made a reckless omission.

**3.     Materiality of Omissions**

The Court finds that Magan's omissions were material to the probable cause

determination. Had Magan disclosed everything he knew, he would have provided an apparent,

irreconcilable contradiction in the affidavit about Fisher's residence on which he failed to

conduct adequate follow-up research. Had Fisher disclosed the relevant information, the affidavit

should have included the omitted information, roughly as follows:

> During a brief interview with Fisher, he admitted he lives with his mother at a new
> residence at 3 119th Drive SE in Lake Stevens Washington. An Accurint report shows
> that Fisher has lived at this same location for 14 years. This is the same address on his
> driver's license, which was issued in September 2016. And this is the same address
> Fisher provided to King County Jail at booking as reported on the Superform. I have not
> confirmed who Fisher's mother is or whether she lives at the address Fisher identifies.
> Another person, Nancy Gill, is listed at this residence, but I have not determined whether
> Nancy Gill is Fisher's mother and I have not reviewed any property records to determine
> whether Fisher owns this residence.

This demonstrates that there would not have been probable cause to issue the warrant. The

evidence identified many inconsistencies and questions for further investigation that, based on

the totality of the circumstances, would not have shown probable cause.

Because Gill has met her burden as to judicial deception, the Court DENIES Defendants'

Motion as to her § 1983 claims for violations of the Fourth Amendment and her false arrest,

unlawful search, and battery claims.

1    **D.      Section 1983 Claim for Failure to Intervene**

2           Gill pursues a claim that Renihan and Magan failed to call off the search when they

3    learned enough to question whether Fisher lived at the residence at 119th Drive SE. (See Am.

4    Compl. Third Claim for Relief (Dkt. No. 31 at 10-11).) Defendants have not explicitly moved for

5    summary judgment on this claim. To the extent they did, the Court finds sufficient material

6    issues of fact preclude judgment on it.

7           Police officers have a duty to intercede when their fellow officers violate a citizen's

8    constitutional rights. Cunningham v. Gates, 229 F.3d 1271, 1289 (9th Cir. 2000). But "officers

9    can be held liable for failing to intercede only if they had an opportunity to intercede." Id. at

10   1289.

11          Gill has shown material facts sufficient to support her claim. Specifically, Renihan and

12   Magan had expected to find Fisher's mother at the home listed in the warrant, though neither

13   Renihan nor Magan investigated who she was. But before the raid, Renihan learned that Fisher's

14   mother was named Margaret Zemak and that this name was not on the Accurint report.

15   Moreover, Renihan had obtained the mother's phone number and failed to determine whether it

16   was that of Zemak. Instead, Renihan and Magan assumed the mother was Gill, because Accurint

17   listed her as living there even though she was only 9 years older than Fisher. With this

18   information known to him, Renihan and Magan should have taken any number of reasonable

19   steps to determine whether Zemak lived at the house before the raid. But they did not. This raises

20   a genuine issue of fact in dispute on this claim.

21   **E.      Qualified Immunity**

22          Defendants ask for the Court to grant summary judgment on the basis of qualified

23   immunity. The Court finds qualified immunity only applies to the claims against Gonzalez.

24

1        Under the doctrine of qualified immunity, a police officer cannot be held liable if the

2  alleged "conduct does not violate clearly established statutory or constitutional rights of which a

3  reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

4  "[B]efore a right is considered to be clearly established, '[t]he contours of the right must be

5  sufficiently clear that a reasonable official would understand that what he is doing violates that

6  right.'" Los Angeles Police Protective League v. Gates, 907 F.2d 879, 887 (9th Cir. 1990)

7  (quoting Anderson v. Creighton, 483 U.S. 635, 639 (1987)).

8        It has long been clearly established that a citizen has the right not be searched or arrested

9  as a result of judicial deception. See Chism, 661 F.3d at 383. As the Court in Chism noted, it was

10  clearly established in the Ninth Circuit by 1991 that "if an officer submitted an affidavit that

11  contained statements he knew to be false or would have known were false had he not recklessly

12  disregarded the truth and no accurate information sufficient to constitute probable cause attended

13  the false statements, ... he cannot be said to have acted in a reasonable manner, and the shield of

14  qualified immunity is lost." 661 F.3d at 383 (quoting Branch v. Tunnell, 937 F.2d 1382 (9th Cir.

15  1991) overruled on other grounds by Galbraith v. Cnty. of Santa Clara, 307 F.3d 1119 (9th Cir.

16  2002)); see also Liston v. County of Riverside, 12 F.3d 965, 972 (9th Cir. 1997); Hervey v.

17  Estes, 65 F.3d 784, 788 (9th Cir. 1995). "In light of Branch, Liston, and Hervey, we conclude

18  that every 'reasonable official would have understood that the [plaintiffs] had a constitutional

19  right to not be searched and arrested as a result of judicial deception." Chism, 661 F.3d at 393

20  (quotation and citation omitted).

21        Neither Magan nor Renihan is entitled to qualified immunity. The law was clearly

22  established that warrant affidavits could not contain reckless omissions or false statements. And

23  Gill has provided sufficient evidence to meet her burden that the warrant affidavit contained

24

1    reckless omissions. The Court DENIES the request for qualified immunity as to Magan and

2    Renihan.

3           But Defendants correctly request qualified immunity for Gonzalez, whose role was

4    limited to executing the search warrant with no knowledge of the omissions in the search warrant

5    affidavit. Plaintiff fails to oppose this requested relief. "It is well established that, in an action for

6    unlawful arrest pursuant to a facially valid warrant, a police officer is entitled to qualified

7    immunity unless no officer of reasonable competence would have requested the warrant." <u>Case

8    v. Kitsap Cty. Sheriff's Dep't</u>, 249 F.3d 921, 926 (9th Cir. 2001) (citation and quotation

9    omitted). Here Gonzalez was entitled to rely on the neutral-magistrate-approved warrant. The

10   court GRANTS the Motion for Summary Judgment in Gonzalez's favor and he is dismissed from

11   this action.

12   **F.      <u>Monell</u> Liability**

13          Gill pursues a <u>Monell</u> claim based on the City's failure to educate officers on how to

14   research residences of suspects. Defendants correctly identify a failure of proof on this claim.

15          For <u>Monell</u> liability to apply, a plaintiff must prove "(1) that [the plaintiff] possessed a

16   constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that

17   this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that

18   the policy is the moving force behind the constitutional violation." <u>Plumeau v. Sch. Dist. No. 40

19   Cnty. of Yamhill</u>, 130 F.3d 432, 438 (9th Cir. 1997) (internal quotation marks and citation

20   omitted; alterations in original). "[T]he inadequacy of police training may serve as the basis for §

21   1983 liability only where the failure to train amounts to deliberate indifference to the rights of

22   persons with whom the police come into contact." <u>City of Canton, Ohio v. Harris</u>, 489 U.S. 378,

23   388 (1989). Similarly, a failure to supervise that is "sufficiently inadequate" may amount to

24

1    "deliberate indifference." <u>Davis v. City of Ellensburg</u>, 869 F.2d 1230, 1235 (9th Cir. 1989). And

2    "for liability to attach in this circumstance the identified deficiency in a city's training program

3    must be closely related to the ultimate injury." <u>Harris</u>, 489 U.S. at 391; <u>see</u> <u>id.</u> at 385 ("[O]ur first

4    inquiry in any case alleging municipal liability under § 1983 is the question whether there is a

5    direct causal link between a municipal policy or custom and the alleged constitutional

6    deprivation.").

7           Gill fails to raise a genuine issue of material fact to support her <u>Monell</u> claim. Gill

8    concedes that SPD has a policy requiring officers to confirm suspect addresses with multiple

9    sources. She argues the policy is inadequate because it does not require detectives to use

10   "sources required to be accurate by statute, such as the County databases or the recorders'

11   office." (Pl. Opp. at 21.) Plaintiff cites to no legal authority that would require consultation to

12   specific data resources. Even if she had, she fails to show why this oversight led to the

13   constitutional violation. At most she argues that the Accurint database was unreliable and that

14   Renihan did not receive sufficient training to know of its reliability. But the foundation of her

15   constitution claims rests on Magan and Renihan's failure to investigate and disclose the apparent

16   conflict between the statement Fisher made and the Accurint data about his residency. Gill has

17   not and cannot show that the constitutional violation is "closely related to the ultimate injury."

18   <u>Harris</u>, 489 U.S. at 391. The Court GRANTS the Motion as to this claim.

19   **G.    Negligence**

20          Defendants seek dismissal of Gill's negligence claim arguing that she has not identified

21   the standard of care that was owed and breached. The Court disagrees.

22          In a recent decision, the Washington Supreme Court held that "the standard tort duty of

23   reasonable care applies with full force to police executing a search warrant." <u>Mancini v. City of</u>

24   <u>Tacoma</u>, ___ Wn.3d ___, 479 P.3d 656, 659 (2021). The Court endorsed the view that "[a]t

common law, every individual owes a duty of reasonable care to refrain from causing

foreseeable harm in interactions with others." <u>Beltran-Serrano v. City of Tacoma</u>, 193 Wn.2d

537, 550 (2019); <u>Mancini</u>, 479 P.3d at 664 (citing same). "This duty applies in the context of law

enforcement and encompasses the duty to refrain from directly causing harm to another through

affirmative acts of misfeasance." <u>Mancini</u>, 479 P.3d at 664 (quoting <u>Beltran-Serrano</u>, 193 Wn.2d

at 550) So "police executing a search warrant owe the same duty of reasonable care that they

owe when discharging other duties." <u>Id.</u> To prevail on her claim, Gill ""must show (1) the

existence of a duty to the plaintiff, (2) a breach of that duty, (3) a resulting injury, and (4) the

breach as the proximate cause of the injury." <u>Id.</u> (citation and quotation omitted).

      Gill has provided sufficient evidence that Magan and Renihan owed a duty of care in

applying for and executing the search warrant. While <u>Mancini</u> addressed the execution of a

warrant and not the application, the Court finds its holding applies broadly to include the warrant

application process. This is evident in the Court's endorsement of the following jury instruction:

> Negligence is the failure to exercise ordinary care. It is the doing of some act which a
> reasonably careful person would not do under the same or similar circumstances or the
> failure to do something which a reasonably careful person would have done under the
> same or similar circumstances

<u>See</u> <u>Mancini</u>, 479 P.3d at 664. Thus, Magan and Renihan owed a duty of care to ensure that they

adequately investigated the target location before applying for and executing the search warrant.

Evidence of this duty can be found in the testimony of detective Cobane, who testified:

> No. 1, if I wasn't sure that I had the right address, I wouldn't be writing the warrant until
> I knew whether I had the right address or not. So, me, personally, I probably would –
> probably would do some surveillance on that place and just double-check all of the
> systems and things that are in place, that we have available to us, to make sure that I've
> done the best that I can in good faith to ensure I've got the right address.

(Cobane Dep. at 40.) When asked why, Cobane testified: "Well, I don't want to disturb anybody that doesn't need to be disturbed." (Id.) Similarly, the City of Seattle's 30(b)(6) witnesses testified:

> Q. If you run an address through a database and it comes back with the name of a person who you're not sure of who that person is, what are detectives taught to do in order to determine who the person is?
>
> A. You would continue your investigation. So, if you run an address, you come up with a name, you take additional steps, including databases that we've discussed and have discussed, to find out more information about that person.

(James Dep. at 18-19 (Dkt. No. 64-1 at 76-77).)

Construed in the light most favorable to the Gill, there is evidence that the Defendants breached this duty by failing to investigate the apparent discrepancy in the information about Fisher's residence as outlined above. The Court DENIES the Motion on this claim.

## I.    Respondeat Superior

While there is no respondeat superior for § 1983 claims, the City can face liability for state law torts via respondeat superior. See Savage v. State, 127 Wn.2d 434, 438-439 (1997) (holding that personal immunity of the officer does not extend to the state in respondeat superior context). Gill faces the burden of showing that Defendants were acting within the scope of their employment. See Kyraecos v. Smith, 89 Wn.2d 425, 429-30 (1977) (affirming summary judgment on respondeat superior claim because the commission of premeditated murder was outside the scope of employment). Gill has identified facts showing that Defendants were acting in the scope of their employment—a fact that Defendants appear not to challenge. And Defendants' motion only cites to § 1983's bar against respondeat superior liability, which does not apply to Gill's state law claims and does not support judgment in Defendants' favor on this claim. Defendants' Motion on this claim is DENIED.

1

**G.    Motion to Strike**

2        In their Reply, Defendants ask the Court to strike Gregory Gilberton's declaration, and a

3  photograph submitted by Gill's daughter. The Court has not considered either in reaching this

4  decision and DENIES the request as MOOT.

5  **II.    Motion to Exclude Gregory Gilbertson**

6        Defendants move to exclude Greg Gilbertson as an expert and strike his expert report.

7  (Dkt. No. 59 at 4.) The Court finds no grounds to grant this relief.

8        Under Rule 702, "[a] witness who is qualified as an expert by knowledge, skill,

9  experience, training, or education may testify in the form of an opinion or otherwise if": (1) the

10  technical or specialized knowledge will help the trier of fact understand the evidence; (2) the

11  expert testimony is "based on sufficient facts or data"; (3) "the testimony is the product of

12  reliable principles and methods"; and (4) "the expert has reliably applied the principles and

13  methods to the facts of the case." Fed. R. Evid. 702. To assess an expert's reliability, "the trial

14  judge must determine whether the testimony has 'a reliable basis in the knowledge and

15  experience of [the relevant] discipline.'" Kumho Tire Co. v. Carmichael, 526 U.S. 137, 149

16  (1999) (quoting Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 592 (1993)). "Rule 702

17  contemplates a broad conception of expert qualifications." Hangarter v. Provident Life & Acc.

18  Ins. Co., 373 F.3d 998, 1015 (9th Cir. 2004) (quotation and citation omitted). "[F]ar from

19  requiring trial judges to mechanically apply the Daubert factors—or something like them—to

20  both scientific and non-scientific testimony, Kumho Tire heavily emphasizes that judges are

21  entitled to broad discretion when discharging their gatekeeping function." United States v.

22  Hankey, 203 F.3d 1160, 1168 (9th Cir. 2000).

23

24

1    Defendants make four arguments in support of excluding Gilbertson as an expert and

2    striking his report. The Court finds no merit in any of them.

3    First, Defendants argue that Gilbertson lacks sufficient expertise to provide a reliable

4    opinion. The Court finds that Gilbertson has the requisite degree of specialized knowledge,

5    training, and experience to testify reliably as to police matters, including warrant applications

6    and executions. He was a police officer in Georgia for 7 years, during which time he obtained 6-

7    7 warrants. He also teaches courses on criminal justice at Centralia College, including courses

8    that touch on warrant applications. (Gilbertson Decl. ISO Opp. to Mot. to Exclude at ¶ 10 (Dkt.

9    No. 69).) Having reviewed Gilbertson's C.V. and declaration the Court finds him qualified.

10    Second, Defendants argue that Gilbertson nowhere links his expertise to the opinions he

11    offers in his report. But the Court does not agree. The report shows that Gilbertson applies his

12    experience to the facts he reviewed.

13    Third, Defendants argue that Gilbertson's expert report contains impermissible legal

14    conclusions. (Def. Mot. at 6-7 (Dkt. No. 59).) Gill tangentially concedes the point, stating that

15    Gilbertson is not being offered to testify about legal conclusions such as probable cause and

16    unlawful detention. (Pl. Opp. at 1-2 (Dkt. No. 68).) Whether the report or portions thereof is

17    admissible is not ripe. Gill has not identified it as a trial exhibit and has not appended it in

18    opposition to the Motion for Summary Judgment. The Court will address any concerns over its

19    contents if Gill seeks to introduce it at trial. Similarly, the Court will address any objections

20    raised at trial to Gilbertson's testimony, should he be called to testify.

21    Fourth, Defendants argue that Gilbertson's testimony will necessarily invade the province

22    of the jury because he speaks to witness credibility. This is not a basis to exclude Gilbertson as a

23    witness. The Court will address any specific objections raised at trial on this issue.

24

1    The Court therefore DENIES the Motion to Exclude in full.

2                                    **CONCLUSION**

3        The Court GRANTS in part and DENIES in part Defendants' Motion for Summary

4    Judgment. The Court finds that Gill has made a sufficient showing that Magan recklessly omitted

5    material information from the search warrant affidavit to defeat summary judgment as to her §

6    1983, false arrest, unlawful search, and battery claims against Magan and Renihan. Neither

7    Magan nor Renihan is entitled to qualified immunity. But Gonzalez is, and is hereby

8    DISMISSED from this case. Defendants have shown that the City of Seattle cannot be held liable

9    under Monell. But Gill may pursue her negligence claims against Magan and Renihan and the

10   City of Seattle under the theory of respondeat superior.

11       The Court DENIES Defendants' Motion to Exclude Gilbertson's testimony and report.

12   The Court finds Gilbertson qualified to offer his opinions in this case and will address any

13   objections made to his opinions and testimony at trial.

14       The clerk is ordered to provide copies of this order to all counsel.

15       Dated March 10, 2021.

16

17                                    Marsha J. Pechman
                                      United States District Judge

18

19

20

21

22

23

24

ORDER ON MOTION FOR SUMMARY JUDGMENT AND MOTION TO EXCLUDE - 20